COMMONWEALTH vs. RICHARD F. O'CONNOR.

Middlesex. February 6, 1990. - June 14, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Criminal,* Instructions to jury, Sentence. *Parent and Child,* Discipline. *Evidence,* Hearsay, Spontaneous utterance, Cumulative evidence, Cross-examination, Judicial discretion. *Witness,* Credibility.

At the trial of an indictment charging the defendant with assault and battery on the fourteen year old daughter of his girl friend (he was living with both at the time), no evidence was presented that would have warranted a jury instruction on the right of a parent, or one in loco parentis, to use reasonable force to discipline a child. [666-669]

Although a mother's out-of-court conversation with her daughter in which the daughter related her account of being the victim of an assault by her mother's boy friend (defendant) was hearsay, and should not have been admitted in evidence at the defendant's trial on an indictment charging assault and battery, either under the fresh complaint doctrine or under the spontaneous utterance exception to the hearsay rule, no occasion for reversal of the defendant's conviction of assault and battery was presented, where the mother's testimony was cumulative of properly admitted testimony and where the record did not support the defendant's contention that the mother's testimony concerning her daughter's physical condition should have been accompanied by a limiting instruction to the jury. [669-671]

The defendant at a criminal trial was not prejudiced by the judge's limitation on his cross-examination of the victim. [671-672]

At the trial of charges against a criminal defendant involving violence which arose in a domestic setting, there was no error in allowing a police officer who investigated the victim's charges to describe his assignment as the sergeant in charge of the "domestic violence unit." [673]

On appeal from a conviction of assault and battery, there was no merit to the defendant's contention that the judge considered improper factors in sentencing the defendant. [673-674]

INDICTMENT found and returned in the Superior Court Department on May 30, 1986.

The case was tried before *James D. McDaniel, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Andrew Silverman,* Committee for Public Counsel Services, for the defendant.

*Kathy Rabin,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. On February 3, 1988, a Middlesex County jury found the defendant, Richard F. O'Connor, guilty of assault and battery on the fourteen year old daughter of his girl friend. He was living with both at the time. The defendant appeals,[1] asserting the judge committed reversible error by (1) refusing a belated oral request to instruct the jury on the privilege of a parent or one in loco parentis to use reasonable means to discipline a child; (2) admitting in evidence the victim's mother's testimony of her daughter's account of the defendant's attack on her; (3) limiting cross-examination of the victim regarding conversations and meetings with representatives of the district attorney's office and the Department of Social Services; (4) allowing a police officer to identify himself as head of the department's "domestic violence" unit; and (5) seeming to take into consideration the more severe charges of which the jury had acquitted the defendant,[2] in sentencing him for the assault and battery. Except in one instance there was no error, and in the sole instance of error, we conclude it was not prejudicial. Therefore, we affirm the conviction and the sentence.

At the time of the event in question, the defendant lived with the victim's mother and her two daughters. He was the

---

[1] A single justice of the Appeals Court granted the defendant a stay of execution of the sentence pending the outcome of this appeal.

[2] The defendant was also indicted, tried on, and found not guilty of, charges of rape of a child and indecent assault and battery on a child under the age of fourteen, both in relation to the same victim.

father of two children born to the victim's mother.[3] Through-
out this period, the defendant was also well acquainted with
the father of the victim. The father frequently visited his ex-
wife's household, for hours at a time, about three to four
days each week, and was a regular participant, with the
mother and the defendant, in discussions about household
rules affecting his daughters. The two girls would also go
visit their father at his home from time to time.

The incident that formed the basis for the defendant's as-
sault and battery conviction occurred sometime in January,
1986, and was triggered by a dispute over the victim's use of
the telephone. What the defendant considered to be an exces-
sive amount of time spent by the victim on the telephone,
had been a bone of contention in the household, and was a
frequent topic of discord between the victim and the defend-
ant. According to the defendant, the single telephone in the
apartment was often "tied up" by the victim, so that when he
telephoned home during his work day,[4] he was generally not
able to get through.

On this particular day in January, the victim was home
sick from school, and the defendant, upon going out to work,
told her not to use the telephone. When he returned to find
her on the telephone with her boy friend, the victim testified,
the defendant "jumped all over" her, slamming her into the
walls repeatedly and blocking her from trying to get away.
The victim then stated she "punched him between the legs,
and he got even more mad," grabbed her as she ran down
the hall, and pushed her against the wall again. As a result,
she testified, she sustained bruises to her back and her neck,
and had a bump on the back of her head.

Sometime after the altercation, the victim's mother testi-
fied that she found the victim crying and angry, and observed
that "[s]he had finger marks on her arms. She had bruises on

[3]The defendant at one point moved out of the household for about one
year due to problems in his relationship with the victim's mother, but sub-
sequently returned after a reconciliation.

[4]The defendant worked at a series of jobs as a delivery person or taxi
driver throughout most of the time he lived with the victim's mother.

her back and she had a bump on her head in the back." Over the defendant's objection, she was allowed to testify that her daughter told her that in the course of a struggle the victim had "grabbed" and "ripped" the defendant's shirt, and he had "banged her up against the walls."

The defendant denied punching, slamming, pushing, or hitting the victim in the course of the January, 1986, dispute over the use of the telephone. He acknowledged only that he had at one point during the argument grabbed the victim by her arm.

1. *Request for "in loco parentis" jury instruction.* At the time he submitted his other requests for jury instructions, the defendant did not ask for a jury instruction on the right of a parent, or one in loco parentis, to use reasonable measures in chastising a child. Nor did he object to the judge's failure to charge on this issue before the jury retired. The defense was that the assault and battery did not occur as described.

During the second day of the jury's deliberations, the foreman sent the judge a note, asking him to "redefine the law covering assault and battery." At that point, defense counsel asked the judge "to consider instructing in regard to assault and battery concerning the legal right of one in loco parentis." The judge stated he was unfamiliar with the existence of such a defense in Massachusetts and, if it was available, what its boundaries would be.[5] The judge declined to give the instruction, and added, "I'll save your rights to that ruling." The defendant asserts that the judge's failure to instruct on this issue was error. We disagree.

The defendant's oral request for an instruction, raised for the first time after the jury had already begun deliberating, failed to comply with rules governing requests for jury instructions. Under rule 70 of the Rules of the Superior Court (1989), such requests "shall be made in writing before the closing arguments unless special leave is given to present re-

---

[5]The judge asked defense counsel whether he could cite any cases to support his theory of an in loco parentis defense to assault and battery under the facts of this case. Defense counsel responded that he could not.

quests later." See *Commonwealth* v. *Lammi*, 310 Mass. 159, 164 (1941); *Commonwealth* v. *Coward*, 7 Mass. App. Ct. 867 (1979). Rule 14(b) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 874 (1979), is to the same effect. Furthermore, the rule requires an objection to the charge before the jury retire. None of these requirements was met.

The defendant's failure to comply with the rules regarding requests for jury instructions was not remedied by the judge's remark, "I'll save your rights to that ruling." That remark "saved" the defendant's right to appellate review of the judge's decision not to give the requested instruction at that time. Furthermore, the judge explained to defense counsel that he believed the jury's question focused on the requirements of assault and battery, and thus he intended to handle the query by instructing the jury again on the elements of that crime. The necessity, extent, and character of supplemental instructions in response to a jury request are matters within a trial judge's discretion. *Commonwealth* v. *King*, 366 Mass. 6, 10 (1974). *Commonwealth* v. *Thomas*, 21 Mass. App. Ct. 183, 186 (1985). The defendant does not argue that the judge failed properly to instruct the jury on the elements of the crime.

We nevertheless review in order to determine whether the judge's failure to instruct on an in loco parentis defense was "so erroneous that it created a 'substantial risk of a miscarriage of justice.' " *Commonwealth* v. *Durning*, 406 Mass. 485, 498 (1990), quoting *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). We conclude that it was not.

No Massachusetts decision or statute grants parents or others a right to use reasonable force in disciplining a child. Other jurisdictions recognize a common law principle that a parent, or one standing in loco parentis to a minor child, is justified in using reasonable force on the child "for the purpose of safeguarding or promoting the child's welfare." *Bowers* v. *State*, 283 Md. 115, 126 (1978). See *State* v. *Rigler*, 266 A.2d 887, 889 (Del. Super. Ct. 1970); *Martin* v. *United States*, 452 A.2d 360, 362 (D.C. 1982); *People* v. *Parris*, 130 Ill. App. 2d 933, 936-937 (1971); *State* v. *Black*, 360

Mo. 261, 268 (1950); *State* v. *Pittard*, 45 N.C. App. 701, 703 (1980). See also Annot., Criminal Liability for Excessive or Improper Punishment Inflicted on Child by Parent, Teacher or One in Loco Parentis, 89 A.L.R.2d 396 (1963).

Of course, as a predicate to establishing such a disciplinary privilege, a person who is not a parent must prove that he or she stands in loco parentis to the child. Annot., 89 A.L.R.2d, *supra* at 399 n.1. To be entitled to the legal status of one in loco parentis, a person must assume all the duties and obligations of a parent toward the child. *Martin* v. *United States, supra* at 362. *Nova Univ., Inc.* v. *Wagner*, 491 So. 2d 1116, 1118 n.2 (Fla. 1986). *Peterson* v. *Kabrich*, 213 Mont. 401, 408 (1984). *Kransky* v. *Glen Alden Coal Co.*, 354 Pa. 425, 428 (1946). *Gribble* v. *Gribble*, 583 P.2d 64, 66 (Utah 1978). The key factors to a threshold showing of in loco parentis status are the intent to take over the position of parent, and the discharge of support and maintenance responsibilities toward the child. *Klein* v. *Sarubin*, 324 Pa. Super. 363, 367-368 (1984). *State* v. *Pittard, supra* at 703. *Fevig* v. *Fevig*, 90 N.M. 51, 53 (1977). *State ex rel. Gilroy* v. *Superior Court.*, 37 Wash. 2d 926, 933 (1951). *McManus* v. *Hinney*, 35 Wis. 2d 433, 437 (1967).

Intent to replace a natural parent is never to be lightly inferred. *In re Appeal of Fowler*, 130 Vt. 176, 179-180 (1972). For example, an in loco parentis relationship does not arise merely because someone in a position of a stepparent has taken a child into his or her home and cares for the child. *Klein* v. *Sarubin, supra* at 368. *In re Appeal of Fowler, supra* at 181. *Matter of Motell*, 54 Wash. App. 2d 708, 712 (1989). An impermanent living arrangement shared between the adult and the child has been held to demand even greater affirmative indication of the adult's intention to assume parental responsibilities toward the child to raise a jury question of his in loco parentis status. *Kransky* v. *Glen Alden Coal Co., supra* at 429 ("meretricious" live-in relationship between adult claimed to be in loco parentis and grandmother of child required greater showing that child was not merely being supported out of household funds adult sup-

plied while he continued to live with his lover, and that there was indeed an independent intent to assume parental responsibilities for the child).

In the case at bar, there is insufficient evidence to warrant the conclusion that the defendant stood in loco parentis to the victim. There was no evidence that the defendant supported the victim financially. In addition, there was evidence of an active natural father who maintained regular contact with his daughters and was involved in the decision-making process regarding their care. *Klein* v. *Sarubin, supra* at 369 (evidence that the children's father was under a support order to maintain his children at the time made in loco parentis status inapplicable to him).

On this record, there was no basis on which a jury could decide the defendant stood in loco parentis to the victim. Therefore, the judge would not have been required to instruct the jury on the theory that one in loco parentis may use reasonable force to discipline a child. *Commonwealth* v. *Freiberg*, 405 Mass. 282, 302 (1989). *Commonwealth* v. *Moore*, 359 Mass. 509, 515-516 (1971).

2. *The mother's testimony to the victim's account of assault.* On direct examination, the victim's mother testified that, after the dispute with the defendant in January, 1986, she observed the victim crying and very angry and that the victim had finger marks on her arms, bruises on her back, and a bump on the back of her head. Over the defendant's objection, the judge then permitted the witness to testify to her conversation with her daughter that day. There was no claim of recent contrivance, bias, or undue influence. The judge admitted the testimony because "it goes to corroborate . . . [the victim's] direct testimony." The defendant asserts the admission of this conversation was reversible error. We disagree.

The victim's out-of-court conversation with her mother was hearsay, and it should not have been admitted. The victim's out-of-court description of the assault and battery is not admissible as "fresh complaint" testimony, as that concept applies only in cases of sexual assaults and rapes. *Common-*

*wealth* v. *Blow*, 370 Mass. 401, 406 (1976). *Commonwealth* v. *Binienda*, 20 Mass. App. Ct. 756, 760 n.6 (1985).

Nor would the mother's repetition of her daughter's description of an assault on her be admissible under the spontaneous exclamation or excited utterance exception to the hearsay rule, as the Commonwealth contends. Under this exception, "a statement is admissible if its utterance was spontaneous to a degree which reasonably negated premeditation or possible fabrication and if it tended to qualify, characterize and explain the underlying event." *Commonwealth* v. *Fuller*, 399 Mass. 678, 682 (1987), quoting *Blake* v. *Springfield St. Ry.*, 6 Mass. App. Ct. 553, 556 (1978). There was no evidence in the record as to how much time had elapsed between the incident reported by the victim and her conversation with her mother. Her statement did not have to be contemporaneous to come within the exception, "provided there has not been time for the exciting influence to lose its sway and to be dissipated." *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 223 (1973). *Rocco* v. *Boston Leader, Inc.*, 340 Mass. 195, 197 (1960). Here however, there was no basis for the judge to have determined that the victim's conversation with her mother met the test of admission as a spontaneous utterance. *Commonwealth* v. *McLaughlin, supra* at 224.

Nevertheless, the erroneous admission of this testimony did not result in prejudicial error. It added nothing to the victim's earlier testimony about the incident. The victim's description of the fight portrayed a more violent struggle in a more graphic form than the mother's hearsay description, which was therefore cumulative. The mistaken admission of hearsay evidence, if merely cumulative of another witness's testimony, does not constitute reversible error. *Commonwealth* v. *Izzo*, 359 Mass. 39, 43 (1971). *Commonwealth* v. *McGrath*, 358 Mass. 814, 815 (1971). *Commonwealth* v. *Mannos*, 311 Mass. 94, 115 (1942). *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. 622, 630 (1987). The mother's testimony concerning the physical condition of her daughter had already been properly admitted. In this context, repeti-

tion of the victim's version of the events would not have prejudiced the defendant's case. The defendant also argues that this evidence was introduced without restriction rather than being limited to corroboration, as is the case with properly admitted fresh complaint evidence. The judge did give a limiting instruction prior to the mother's testimony. He also charged in a similar fashion. There was no adequate objection to the charge on this ground. Furthermore, although the briefs do make passing references to the lack of the limiting instruction, the central thrust of the argument was against the admission of the hearsay in any form. On this point, of course, the defendant is correct, but unprejudiced.

3. *Limitation of the cross-examination of the victim.* The defendant contends that the judge improperly limited his cross-examination of the victim. There was no prejudicial error.

During the course of his cross-examination of the victim, defense counsel had elicited testimony that the victim had met with representatives of the district attorney's office, the Somerville police department, and the Department of Social Services prior to trial (and in some instances, before she testified at the grand jury). The victim also had acknowledged that a member of the district attorney's staff had taken her around the courthouse and explained to her what the trial was going to be like. Defense counsel then sought to probe the victim's relationship and the substance of her conversations with the district attorney's staff. The judge sustained the Commonwealth's objections to this line of inquiry.

At side bar, defense counsel defended the relevance of these questions by stating: "[M]y contention is this young woman has been taken under the wing of the District Attorneys and the [Department of Social Services] and the police and the victim witness people, and that she has been taken through the system and coached . . . in what words to use when testifying." He conceded that he had no evidence that the witness had been "coached" other than his observation of her on the stand. Thereupon, the judge ruled that, in the absence of any proof of the victim's being "coached" beyond

"supposition or surmise," the defendant could not inquire in further detail into the witness's contact with the "system . . . a so-called victim witness advocate program."

A defendant is entitled as a matter of right to a reasonable cross-examination of a witness in order to show bias and prejudice. *Commonwealth* v. *Martinez,* 384 Mass. 377 (1984). *Commonwealth* v. *Haywood,* 377 Mass. 755, 760 (1979). It is equally true, however, that the scope and contours of cross-examination are within the judge's sound discretion, and that he or she may limit "to what extent the accuracy, veracity, and credibility of a witness may be tested." *Commonwealth* v. *Repoza,* 382 Mass. 119, 125 (1980), *S.C.,* 400 Mass. 516, cert. denied, 484 U.S. 935 (1987). See *Commonwealth* v. *Barnes,* 399 Mass. 385, 393 (1987). This discretion is not subject to reversal unless the defendant can show he was prejudiced by too narrow a restriction in his cross-examination rights. *Commonwealth* v. *Repoza, supra.*

The witness was subjected to skillful and rigorous cross-examination in which she was shown to be forgetful of important details and evasive. Although she contended that she had been the victim of many years of sexual abuse, she admitted that she told no one including her father, mother, aunts, friends, physician, and boyfriend until just prior to the complaint to her mother that led to the charges. She admitted having been in trouble in school, using marihuana, and running away from home. She also admitted to wide discrepancies between her grand jury and trial testimony.

On redirect she admitted to talking to the assistant district attorney before trial about her testimony on two occasions. On recross she admitted discussing the words she would use in testifying, but denied that she had been told what words to use or what to say. The fact that the jury found the defendant not guilty on all but the assault charge, which could have been based on the defendant's own version of the event, demonstrates the effectiveness of the attack on the witness's credibility. The defendant was not prejudiced by the judge's limitation on his cross-examination of the victim.

4. *Police officer-witness's identification testimony.* The Somerville police officer who investigated the victim's sexual abuse and rape charges was allowed to describe his assignment as the sergeant in charge of the "domestic violence unit." The defendant objected, arguing that, since the officer was not qualified, nor being called, to be an expert on domestic violence, such identification was unnecessary. We hold there was no error.

While the fact that the police officer had a special assignment within the department might not be the most probative or relevant piece of testimony at trial, it did constitute one of the officer's job credentials that the jury were entitled to hear in weighing his credibility, as was his fifteen years of experience as a police officer. "It is often stated that any evidence that 'throws light' on an issue is properly admitted." P.J. Liacos, Massachusetts Evidence 408 (5th ed. 1981). See *Commonwealth* v. *Palladino*, 346 Mass. 720, 726 (1964).

Furthermore, the charges against the defendant involved violence which arose in a domestic setting. That the officer who investigated the charges[6] was the head of a "domestic violence unit" could hardly be considered to have had any undue effect on the jury. See *Commonwealth* v. *Carrion, ante* 263, 276 (1990) (admission of police wanted flyer for defendant in connection with victim's murder, even if error for reason offered, was harmless, considering the defendant was being tried for the murder).

5. *Sentencing considerations.* During the course of the sentencing hearing the judge acknowledged that the jury had found the defendant not guilty of the more serious charges against him but stated, "their findings don't have anything to do with what I'm about to impose on him." He then sen-

---

[6]We note that the defendant's appeal here concerns only the assault and battery conviction. The police officer in question did not testify to any investigation into the January, 1986, indictment and, on voir dire, indicated that he had never heard anything about it. Therefore, any influence of his identification with the "domestic violence unit" in the context of the matter appealed here is even more attenuated.

tenced the defendant to two and one-half years in the house of correction, as recommended by the Commonwealth.

The defendant contends that the judge's remark about the jury's findings, together with the length of the sentence imposed, indicates that the judge improperly based part of his decision on the charges on which the defendant was found not guilty.

Taken in context, the judge's remark was merely a restatement of the principle that the factors he considers in making a decision on sentencing are wholly distinct from, and much broader than, those a jury may take into account in making findings on guilt or nonguilt at trial. *Commonwealth v. Burke*, 392 Mass. 688, 694 (1984). *Commonwealth v. Celeste*, 358 Mass. 307, 309-310 (1970). *Commonwealth v. O'Connor*, 7 Mass. App. Ct. 314, 321 (1979).

The sentence imposed by the judge was within the statutory limits of G. L. c. 265, § 13A (1988 ed.). "The judge is permitted great latitude in sentencing, provided the sentence does not exceed statutory limits." *Commonwealth v. Burke*, quoting *Commonwealth v. Celeste, supra* at 309-310. In this case, it is clear that the judge considered that the defendant, a large adult male, assaulted a small fourteen year old girl, just over one-third his size. While the defendant did not have an extensive criminal record, he had been convicted of larceny on at least one occasion, and was in default on nonsupport charges. There was no error in sentencing.

The judgment of the Superior Court is affirmed.

*So ordered.*