## COMMONWEALTH *vs.* CHRISTINE M. RUBECK.

No. 04-P-818.

Hampshire. April 6, 2005. - September 1, 2005.

Present: GREENBERG, SMITH, & GELINAS, JJ.

*Assault and Battery. Practice, Criminal,* Assistance of counsel, Request for jury instructions. *Parent and Child,* Discipline.

Under the circumstances at the trial of a criminal complaint charging the defendant with assault and battery, the defendant's attorney should have requested a jury instruction concerning the right of a parent to use reasonable force to discipline a child for the purpose of safeguarding or promoting the child's welfare, but the omission of the jury instruction did not result in a substantial risk of a miscarriage of justice, where the instructions that the judge gave included all of the elements of the charged offense and did not have the effect of shifting the burden of proof to the defendant. [397-402]

COMPLAINT received and sworn to in the Northampton Division of the District Court Department on January 22, 2003.

The case was tried before *Fredric D. Rutberg*, J.

*Russell W. Fuller* for the defendant.

*Cynthia M. Pepyne*, Assistant District Attorney, for the Commonwealth.

GELINAS, J. The defendant, Christine M. Rubeck, was convicted by a jury of assault and battery, G. L. c. 265, § 13A, in the Northampton District Court. She appeals, claiming that her counsel was ineffective in not requesting a jury instruction concerning the right of a parent to use reasonable force to discipline a child for the purpose of safeguarding or promoting the child's welfare. We affirm the conviction.

The incident giving rise to the complaint occurred in the waiting room of the Valley Medical Group in Florence. Rubeck, accompanied by her two year old son, drove a friend, Colleen Barber, to a medical appointment. While in the waiting room,

Rubeck's son began to misbehave. From the evidence, the jury could have found as follows:

The child was "running around and jumping up and down and whining." Rubeck responded by yelling at the child, grabbing him, pulling him over to her and yelling in his face, saying such things as "shut up, be quiet, sit down." The child responded, "I don't wanna" and made other "whiny" statements. Rubeck put her foot on the child's foot, pulled him toward her and said, "If you don't stop it now, we're going out to the car, and you'll be there, alone, with me." The child immediately became quiet and "looked afraid." The child then resumed jumping and running; Rubeck responded by grabbing the child by the collar and yanking him toward her while saying, "Shut up, stop it."

Rubeck then grabbed the child by the arms, shook him, and threw him down into the chair, a distance of "a couple of feet." The child was thrown "with force that you don't use on a child that age," in a manner that was "too aggressive for a two year old." The child was crying. Rubeck was yelling in a voice that became progressively louder. She appeared frustrated with the child and "out of control." Patients waiting to be seen asked medical personnel at the office to intervene. Rubeck took the child outside. The police were called and responded, taking statements from several witnesses.

In Rubeck's defense, her friend, Barber, denied that Rubeck hit the child or threw the child into the chair, and stated that when Rubeck put the child in the chair, "He would get up and start acting out again, and throwing papers up in the air. . . . He just kept saying, 'No, I'm not going to sit, Mommy.' . . . He said no. He kept saying no, when Mommy kept saying, 'okay, come on, sit.' " Barber further testified that Rubeck was not yelling but, rather, was "talking in a normal voice." On cross-examination, Barber denied the prosecutor's statement that Rubeck "forcefully put [the child] in the chair. Threw him in the chair," stating, "No, she did not . . . she . . . put him in the chair. She didn't throw him. She said, 'okay, . . . here, sit.' "

"A defendant seeking a new trial based on a claim of ineffective assistance of counsel bears the burden to establish both

prongs of the familiar test articulated in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974): (i) 'whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer'; and (ii) 'whether [such ineffectiveness] has likely deprived the defendant of an otherwise available, substantial ground of defence.' " *Commonwealth* v. *Pike*, 53 Mass. App. Ct. 757, 760 (2002). If an alleged failure by counsel to request a jury instruction does not create a substantial risk of a miscarriage of justice, then there can be no basis for an ineffective assistance of counsel claim. See *Commonwealth* v. *Pike*, 52 Mass. App. Ct. 650, 654 n.4 (2001). Failure to request the instruction did not create a substantial risk of a miscarriage of justice.

The Legislature has not chosen to recognize or approve a parental right to use force in disciplining a child, and we know of no case in Massachusetts that specifically recognizes such a right, although there are allusions to this parental right in our cases. See *Commonwealth* v. *Rodriguez*, 445 Mass. 1003, 1004 (2005). In *Commonwealth* v. *O'Connor*, 407 Mass. 663, 667 (1990), the court discussed such a right, noting, however, that, as of that time, "[n]o Massachusetts decision or statute grants parents or others a right to use reasonable force in disciplining a child." The court noted other jurisdictions where a common-law principle, that a parent or one standing in loco parentis is "justified in using reasonable force on the child 'for the purpose of safeguarding or promoting the child's welfare,' " is recognized. *Id.* at 667-668, quoting from *Bowers* v. *State*, 283 Md. 115, 126 (1978), and citing *State* v. *Rigler*, 266 A.2d 887, 889 (Del. Super. Ct. 1970); *Martin* v. *United States*, 452 A.2d 360, 362 (D.C. 1982); *People* v. *Parris*, 130 Ill. App. 2d 933, 936-937 (1971); *State* v. *Black*, 360 Mo. 261, 268 (1950); *State* v. *Pittard*, 45 N.C. App. 701, 703 (1980). More recent cases have confirmed the existence of the common-law rule in some States. See, e.g., *People* v. *Roberts*, 351 Ill. App. 3d 684, 688 (2004). On the civil side, the defense is also recognized. See *ibid.*, quoting from Restatement (Second) of Torts § 147(1), at 265 (1965) ("A parent is privileged to apply such reasonable force . . . upon his child as he reasonably believes to be necessary for its

proper control, training, or education"). Neither the validity of the defense nor its parameters were decided by the court in *O'Connor*, however, as the defendant there did not make a threshold showing that he held the status of either a parent or one acting in loco parentis. *Commonwealth* v. *O'Connor*, 407 Mass. at 668-669.

In an early decision, the court made oblique reference to the use of force to "support . . . the rightful authority of the father," but in that case, without further discussion, concluded that the jury could find that actions taken by the father and others to remove his daughter, then dying of consumption, from the place where she was living, were "excessive and unjustifiable." *Commonwealth* v. *Coffey*, 121 Mass. 66, 69 (1876).

The right of parents to use reasonable force to discipline their children was most recently discussed in *Commonwealth* v. *Torres*, 442 Mass. 554, 568 n.11 (2004). There, the defendant complained that no instruction had been given regarding a parent's "privilege to use reasonable force when disciplining her children." The court held that, because the mother's abuse of her young children was so extreme that her actions could not possibly come within any privilege, no such instruction was warranted.

In *Cobble* v. *Commissioner of the Dept. of Social Servs.*, 430 Mass. 385, 387-388, 395 (1999), the court ruled that a parent's spanking of a nine year old child with a leather belt, delivering one or two (and no more than five) blows to the child's fully clothed buttocks in a nonviolent and controlled manner and not in anger, and leaving slightly pink marks with no bruising, combined with an explanation of the reason for the punishment and expressions of caring, did not constitute abuse as defined in the regulations of the Department of Social Services as set out in 110 Code Mass. Regs. § 2.00 (1996). The court noted that the regulations, promulgated pursuant to authority granted in G. L. c. 119, § 51B(8), "clearly draw a line between permissible physical discipline and prohibited abuse," as the regulations clearly specify the types of physical injuries that may not be inflicted on children. *Cobble* v. *Commissioner of the Dept. of Social Servs.*, 430 Mass. at 395.

Instruction 3.15 of the Massachusetts Superior Court Criminal

Practice Jury Instructions (1st Supp. 2003) proposes a jury instruction stating that "[a] parent, or one acting in the position of a parent and who has assumed the responsibilities of a parent, may use reasonable force to discipline (his/her) minor child. However, a parent may not use excessive force as a means of discipline or chastisement." As to those who are not parents, but are only "acting in the position of a parent," there are a variety of statutes and regulations that specifically prohibit or severely curtail the use of force as a means of discipline. See, e.g., G. L. c. 71, § 37G(*a*) (corporal punishment of pupils in public schools prohibited); 102 Code Mass. Regs. § 7.10 (1997) (written policy of group day care or school age child care program licensee shall prohibit "spanking or other corporal punishment of children"); 102 Code Mass. Regs. § 8.12 (1997) ("spanking or other corporal punishment" must never be used to guide behavior of children in family child care and large family child care homes); 105 Code Mass. Regs. § 430.191 (1999) ("[c]orporal punishment, including spanking," is prohibited at recreational camps for children); 115 Code Mass. Regs. § 5.14 (1995) (any intervention for behavior modification of mentally retarded persons that involves physical contact such as spanking, slapping, or hitting must follow special certification requirement).

Against this backdrop, we conclude that, viewing the evidence in the light most favorable to the defendant, see *Commonwealth v. Randolph*, 438 Mass. 290, 299 (2002), the instruction was warranted. Here, her friend's testimony, that Rubeck did not hit or yell, talked in a normal voice, only placed her hands on the arm of the child, and put him in the chair, rather than throwing him, supports a possible conclusion that Rubeck acted reasonably in disciplining her child and bringing him under control.

It is nonetheless arguable that the use of physical chastisement for preservation of discipline might never be justified in the case of a child of two years.[1] Here, there was evidence that

---

[1] "The use of physical force [in chastisement] by a parent is privileged only when it is used for the 'training or education of the child or for the preservation of discipline.' (Restatement, Torts 2d, § 151 [(1965)].) When the child does not have the capacity to understand or appreciate the correction, the

Rubeck did not use reasonable force in a calm, nonviolent and controlled manner to train or educate her two year old child, but rather that she screamed, yelled and used unreasonable force, that she was frustrated and out of control, and that the use of force escalated and continued as Rubeck grew more angry and frustrated. And, as noted, there was evidence that she stepped on her child's foot, pulled him toward her and threatened him, and grabbed him by the collar and "yank[ed]" him in toward her while telling him to "shut up." There was further evidence that witnesses became so alarmed when Rubeck threw the child into the chair that the office medical staff was asked to intervene. Several witnesses characterized the force used as more than reasonable, and "force that you don't use on a child that age." Concern rose to the level of calling the police.

While we are constrained to consider the evidence in the light most favorable to Rubeck, we conclude, nevertheless, that the omission of the jury instruction did not result in a substantial risk of a miscarriage of justice. In closing argument, defense counsel argued forcefully that Rubeck's actions were justified as a parent trying to exercise control over her child.[2] The judge charged that, in order to prove assault and battery, the Commonwealth had to show that Rubeck touched the child "without having any right or excuse to do so." The omitted instruction, that a parent may use "reasonable force" but not "excessive force" to discipline her child, is essentially an elaboration of the "right or excuse" that was included in the judge's charge. As given, the instruction included all the elements of the charged offense, and did not have the effect of shifting the burden of proof to the defendant. Thus, there was no substantial risk of a miscarriage of justice. See *Commonwealth* v. *Zaccagnini*, 383 Mass. 615, 616, 618 (1981). Contrast *Commonwealth* v. *Colon*,

value of the training, education or discipline is lost upon him and, therefore, the parental privilege of the use of physical force is negated." (Footnote omitted.) *Matter of Rodney C.*, 91 Misc. 2d 677, 680-681 (N.Y. Fam. Ct. 1977).

[2]Rubeck does not claim error in failing to request the instruction based on physical contact necessary to restrain the child from interfering with others in the waiting room or to prevent him from engaging in dangerous conduct. In any event, counsel's argument and the judge's charge would adequately cover any such physical contact here.

52 Mass. App. Ct. 725, 731 (2001) (substantial risk of miscarriage of justice where essential element of charged offense omitted from jury instructions). Counsel was thus not ineffective.

*Judgment affirmed.*