Milkey, J.
Following a jury trial in the District Court, the defendant, Christine M. Packer, was convicted of assault and battery of her fourteen year old stepdaughter (daughter), pursuant to G. L. c. 265, § 13A(a). The daughter’s father was likewise charged, and there was a joint trial. Both defendants requested a jury instruction on the affirmative defense of parental discipline. At the conclusion of the evidence, the judge instructed the jury that they could consider excusing the father’s actions as reasonable parental discipline, but that they could not do so with regard to the defendant. The jury found the defendant guilty, while acquitting the father. On appeal, the defendant argues that this differential treatment constituted reversible error. Under the particular circumstances presented, we agree.
Background. 1. The family. At the time of the incident, the daughter lived with her father, the defendant, and the daughter’s eight year old half-sister (born of the father and the defendant). The father and the defendant were married, and the jury reasonably could have inferred that the couple had been together for at least eight years (the age of the half-sister).[1] The father was never married to the daughter’s biological mother, and the daughter never lived with her. In fact, there was no evidence whatsoever that the daughter’s biological mother had any ongoing parenting role in her life.
With the biological mother playing no apparent role in the daughter’s life, the daughter viewed the defendant as her “mother” or “mom” (as she repeatedly referred to the defendant in her trial testimony). Despite this, or perhaps because of it, the adolescent daughter’s relationship with the defendant was somewhat volatile. The daughter testified that she simultaneously loved and could not “stand” the defendant. When the father’s counsel tried to get her to acknowledge that she did not consider the defendant as her “mother,” the daughter denied this.
The daughter fought with both her father and the defendant from time to time. She acknowledged that at least some of that conflict was over whether she “lied to them or told the truth.” She also acknowledged multiple instances of her lying to the defend *587 ant or others.[2] The events that gave rise to the assault and battery charges arose in this context.
2. The incident. On March 30, 2011, the daughter went into the family’s kitchen at approximately 5:30 a.m. to eat breakfast before school. The defendant was already there, where she was making the daughter a boxed lunch for school. The two had a conversation in which the defendant “very nicely” offered the daughter some fruit that she was cutting up. At one point, the defendant noticed that some cheese she had expected to find in the refrigerator was missing, and she asked the daughter whether she had eaten it. The daughter initially denied that she had done so. However, after being challenged by the defendant about the truthfulness of that denial, the daughter admitted to having eaten the cheese.
According to the daughter’s testimony, the defendant proceeded to strike the daughter’s right ear with her hand causing it to bleed. In addition, the defendant threw the daughter’s cellular telephone across the room. After the daughter went to her bedroom, the defendant entered the bedroom and grabbed and pulled the daughter’s hair. The defendant and the father then spoke privately. Although there was no direct testimony about what the two said to each other, the daughter testified that the defendant went to get the father to “settle the dispute.” The father proceeded to the daughter’s bedroom where — according to the daughter’s testimony — he twice pretended to punch her in the face and then actually did so.
Later that day, the daughter reported the incident to her ninth grade adjustment counselor at a regularly scheduled meeting. The counselor did not notice any physical marks on the daughter when she first arrived. However, after the daughter reported the incident, the counselor carefully examined the daughter’s head *588 and was able to observe a swollen lip and cut gum (in the area where the father allegedly “punched” her), and a “red like scratch mark” on the daughter’s right ear (where the defendant allegedly struck her). An investigation and these charges ensued.
3. The jury instruction. When the defendant and the father requested a parental discipline instruction, the Commonwealth argued that neither one was entitled to such an instruction. Specifically, the Commonwealth argued that no reasonable jury could conclude either that the defendant and the father were engaged in disciplining the daughter, or — even if their actions did amount to discipline — that they employed only “reasonable” force. The judge ultimately rejected that argument, and he therefore decided to give a parental discipline instruction for the father, the daughter’s legal parent. He instructed the jury that “[a] parent may use reasonable force to discipline his minor child . . . [but] may not use excessive force as a means of discipline or chastisement.”[3]
Notably, in opposing a parental discipline instruction for both the defendant and the father, the Commonwealth did not differentiate between the two. Indeed, the prosecutor himself earlier in the trial referred to the defendant as “the mother” and used the term “their . . . daughter” in reference to the defendant and the father.[4] Nevertheless, the judge sua sponte decided to treat the defendant differently from the father. He not only denied the defendant’s request for the same instruction, but also instructed the jury that “you may consider this principle [of parental discipline] only in the case against [the codefendant father], not in the case against [the defendant].” As discussed infra, the judge read Commonwealth v. O’Connor, 407 Mass. 663 (1990) (O’Connor),
*589 Discussion. In Commonwealth v. Dorvil, 472 Mass. 1, 2, 12 (2015) (Dorvil), the Supreme Judicial Court expressly recognized a common-law parental privilege to use reasonable force to discipline a minor child. The court laid out the contours of such a defense as follows:
“[A] parent or guardian may not be subjected to criminal liability for the use of force against a minor child under the care and supervision of the parent or guardian, provided that (1) the force used against the minor child is reasonable; (2) the force is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor’s misconduct; and (3) the force used neither causes, nor creates a substantial risk of causing, physical harm (beyond fleeting pain or minor, transient marks), gross degradation, or severe mental distress.”
Id. at 12. Moreover, “[a]s with other affirmative defenses, where the parental privilege defense is properly before the trier of fact, the Commonwealth bears the burden of disproving at least one prong of the defense beyond a reasonable doubt.” Id. at 13. On the trial record established in Dorvil, which included evidence that the defendant there administered a “smack” to the clothed bottom of a two year old, the court determined the evidence insufficient as a matter of law to support the defendant’s conviction of assault and battery. Id. at 13-15.
In the case before us, the defendant’s principal claim is that the judge erred by instructing the jury that they could consider a parental discipline defense only as to the father.[5] The judge denied the defendant the requested instruction solely because she was not the daughter’s legal parent and — in the judge’s view — had not sufficiently demonstrated that she was acting in loco parentis. See O’Connor, 407 Mass. at 668 (a nonparent seeking to secure a parental discipline instruction bears the burden of showing “that he or she stands in loco parentis to the child ... [and this *590 in turn requires a showing that the] person . . . assume[s] all the duties and obligations of a parent toward the child”).
Commenting on O’Connor, the judge stated that being a stepparent by itself is insufficient to establish that one is acting in loco parentis and that instead “you’d almost have to take over for the actual parent.” The judge then highlighted that here, “the actual parent [presumably, the father] lived in the same household.” The judge added that “there’s no evidence or basis on which a jury could decide that [the defendant] stood in local parentus [sic] for this child.”
As an initial matter, we consider whether Dorvil left open the possibility that one acting in loco parentis may raise a parental discipline defense. The Commonwealth accurately observes that Dorvil states that such a defense is available to a “parent or guardian.” 472 Mass. at 12. However, Dorvil involved a defendant who was the child’s legal parent, and it therefore unsurprisingly did not address the rights of someone acting in loco parentis. To be sure, at the time the Supreme Judicial Court resolved O’Connor, it had not squarely decided that a common-law parental discipline defense existed for anyone. However, the analytical premise of O’Connor is that one serving in loco parentis has whatever rights a legal parent has. We see nothing in Dorvil’s shorthand reference to “parent or guardian” as intended to undo that premise.
The defendant urges us to adopt a general presumption that stepparents act in loco parentis with regard to their spouses’ children. We decline to do so. The mere fact that one is married to a legal parent obviously may say little about the nature and extent of the particular parenting role that he or she plays, and that role presumably will vary from household to household. See O’Connor, 407 Mass. at 668 (“an in loco parentis relationship does not arise merely because someone in a position of stepparent has taken a child into his or her home and cares for the child”).
At the same time, we consider it equally self-evident that stepparents are not precluded from playing an in loco parentis role just because one of the children’s legal parents also resides in the same household (as is typically the case). Massachusetts cases have long recognized the pervasiveness of diverse family structures, including the blended family. For example, in Mulhern v. McDavitt, 16 Gray 404, 406 (1860), the Supreme Judicial Court observed that “[i]n this commonwealth it is quite common, upon second marriages, that the wife’s children are received into *591 the family as members; and such an arrangement must tend to promote the happiness of the mother and the welfare of the children.” The court noted that a stepparent, by receiving a spouse’s child into the family, may stand in loco parentis, with the “rights and obligations of a parent,” and further noted that “the policy of the law is to encourage an extension of the circle and influence of the domestic fireside, and its presumptions are in favor of the existence of this relation.” Ibid.[6] Massachusetts case law firmly recognizes and affirms the reality that many children live in households headed by at least one person who, although performing a critical parenting role, is neither biologically nor legally related to them. See E.N.O. v. L.M.M., 429 Mass. 824, 829, cert. denied, 528 U.S. 1005 (1999) (observing, in the context of same-sex couples prior to the recognition of same-sex marriage rights, that a “child may be a member of a nontraditional family in which he is parented by a legal parent and a de facto parent”). Massachusetts statutes, too, recognize the important parental role that stepparents and others can serve.[7]
Against this rich backdrop, the meaning and reach of the dicta in O’Connor come into sharper focus. Although the court stated there that an “[ijntent to replace a natural parent is never to be lightly inferred,” it did not purport to establish a bright-line test for resolving whether in loco parentis status applies. O’Connor, 407 Mass. at 668. The defendant in O’Connor was a mere boy friend of the child victim’s mother who resided in the same home in an “impermanent living arrangement,” and who made no apparent financial contribution to the household. Id. at 664, 668-669. In addition, the child’s biological father (in addition to the mother) continued to play an active parenting role in the *592 child’s life. Id. at 669. It was under these circumstances that the court concluded that “there was no basis on which a jury could decide that the defendant stood in loco parentis to the victim.” Ibid.[8]
The adult-child relationship before us bears little resemblance to the one at issue in O ’Connor. Instead of being an itinerant boy friend or girl friend, the defendant was the child’s long-term stepparent who lived full time in the same household. Moreover, as noted, there was no evidence that the daughter’s biological mother played any ongoing role in her life. Significantly, the daughter viewed the defendant as her “mother,” providing robust evidence that the defendant served that role in the family. Cf. Commonwealth v. Torres, 442 Mass. 554, 568 (2004) (fact that children referred to the defendant as “Daddy” signified their “understanding that the defendant had a parental role in the household”). Although the precise nature of the relationship between the daughter and the defendant was not fully developed at trial, the thrust of the evidence was that the defendant was part of a stable family unit and that she functionally served as mother and coparent to the daughter. In our view, there was a sufficient basis on which the jury could have concluded that the defendant served an in loco parentis role.[9] See O’Connor, 407 Mass. at 668, citing with apparent approval Gribble v. Gribble, 583 P.2d 64, 66 (Utah 1978). See also Gribble v. Gribble, supra at 65-68 (where the former stepfather had “lived with the child from the time he was two months old . . . and ... the child . . . had no contact with his *593 biological father,” a hearing was required to determine whether an in loco parentis relationship existed entitling the stepfather to visitation rights).[10] Any doubt as to whether the defendant was playing an in loco parentis role should have been left to the jury as fact finder.[11]
The Commonwealth asks us to affirm on the ground that the defendant was not entitled to a parental discipline instruction even if she had been serving in loco parentis. Its contention that there was “no evidence” that the defendant was engaged in discipline is simply at odds with the record. There was evidence that the daughter had a history of conflict with her parents over whether she lied to them, that she had given her parents reason not “to believe and trust” her, that she lied on a persistent basis, and that the defendant in fact struck her in direct response to her having admitted just such a lie. On the record before them, it was open for the jury to find (had they been so instructed) that the defendant’s actions were “reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor’s misconduct [here, the daughter’s repeated lying].”[12] Dorvil, 472 Mass. at 12.
The Commonwealth principally contends, as it did below, that the defendant struck the daughter out of anger or frustration, and that she therefore cannot claim that she was engaged in discipline at all. However, the Supreme Judicial Court rejected just such an argument in Dorvil, ruling that the viability of a parental discipline defense should not turn on the parent’s emotional state. See id. at 13-14 (expressly abrogating dicta in Commonwealth v. Rubeck, 64 Mass. App. Ct. 396, 400-401 [2005]). As the court *594 explained, “It is understandable that parents would be angry at a child whose misbehavior necessitates punishment, and we see no reason why such anger should render otherwise reasonable uses of force impermissible.” Dorvil, 472 Mass. at 14.
The Commonwealth additionally argues that the defendant (and the father) should not have been allowed to raise a parental discipline defense because the amount of force they used was excessive as a matter of law. We are not unsympathetic to this argument, especially with regard to the father. See Commonwealth v. Torres, 442 Mass. at 568 n.11 (parental discipline instruction was not warranted where the evidence of physical abuse by the parent was so extreme that no reasonable jury could have found it justified). However, viewing the evidence in the light most favorable to the defendant, reasonable jurors could have concluded on this record that she did not “cause[ ], [ ]or create[ ] a substantial risk of causing, physical harm (beyond fleeting pain or minor, transient marks), gross degradation, or severe mental distress.” Dorvil, 472 Mass. at 12. In this regard, we note that although the jury evidently concluded that the defendant touched the daughter in some fashion, the degree of force she used was hardly definitively established, especially where the corroborating testimony described the resulting injury only as a “scratch.”[13] While there is considerable force to the Commonwealth’s position that the defendant’s behavior should not be viewed as reasonable parental discipline, her actions were not so out of bounds as to exclude such a defense from the jury’s consideration.[14] In our view, the judge did not err in concluding — after considerable reflection — that were the defendant acting in loco parentis, it would have been for the jury to weigh her *595 parental discipline defense.[15]
Moreover, even if neither codefendant were entitled to a parental discipline instruction, the judge’s differential treatment of the two similarly situated codefendants caused fundamental unfairness to the defendant and independently constituted error. By treating the defendant and the father differently in a manner not warranted by the evidence, the judge’s instructions tended to invite the jury to focus on the defendant as the more culpable party. Cf. United States v. Brandon, 17 F.3d 409, 453 (1st Cir.), cert. denied sub nom. Granoff v. United States, 513 U.S. 820 (1994) (discussing the difficult choices trial judges face in fashioning jury instructions in multiple defendant cases and the potential dangers of inadvertently “turning] the spotlight” on one defendant).
The defendant’s claim of error was fully preserved, and the only remaining question is whether the faulty instructions constituted prejudicial error. The father received the benefit of the instruction, and the jury acquitted him even though the evidence strongly suggests that, if anything, he struck the daughter with more force than did the defendant. Under these circumstances, we “cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error.” Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994) (quotation omitted).[16] In any new trial, the judge will be free to revisit whether a parental discipline instruction is warranted on the evidence presented.

Judgment reversed.

Verdict set aside.

 In assessing whether the requested instruction was warranted, we view the relevant trial evidence in the light most favorable to the defendant. See Commonwealth v. Randolph, 438 Mass. 290, 299 (2002).

 In her testimony, the daughter admitted to lying to the defendant, school officials (Q.: “You lied to the school officials, correct?”; A.: “Yes.”), and the police (<2.: “And it’s fair to say you didn’t tell [the investigating officer] the truth, correct?”; A.: “Yes.”). In fact, she “admitted to at least being inaccurate on a minimum of five occasions” in the testimony she had given at trial. The daughter also admitted that in February of 2012 (that is, some ten months after the incident), she wrote the father a letter in which she stated, “When this is all resolved, I hope you’ll be able to believe and trust me.” The jury could have inferred from such a statement that the daughter was acknowledging that she had given her parents reason not “to believe and trust” her. There was ample evidence on which reasonable jurors could conclude that the daughter lied on a persistent basis.

 The judge appears to have relied on instruction 3.15 of the Massachusetts Superior Court Criminal Practice Jury Instructions (Mass. Cont. Legal Educ. 1st Supp. 2003), which reads in full as follows:
“PARENTAL DISCIPLINE
“A parent, or one acting in the position of a parent and who has assumed the responsibilities of a parent, may use reasonable force to discipline (his/her) minor child. However, a parent may not use excessive force as a means of discipline or chastisement.”
We note that in 2013, although the language did not change, this instruction became instruction 5.11.

 To the extent that anyone at trial emphasized the defendant’s status as a mere stepparent, it was the father’s counsel. Relying in part on an allusion to Cinderella, the father’s counsel suggested to the jury that the daughter so wanted to escape living with the defendant that she lied about the assaults. *589 as commanding this result. The defendant timely objected to this differential treatment.

 There is no merit to the defendant’s separate argument that the evidence of an assault and battery was insufficient as a matter of law. Viewing the trial evidence in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979), there was ample basis upon which jurors could have concluded that the defendant’s hitting the daughter did not constitute reasonable parental discipline.

 See Roush v. Director of the Div. of Employment Security, 377 Mass. 572, 575-576 (1979), quoting from Coakley’s Case, 216 Mass. 71, 74 (1913) (“The voluntary assumption of the obligations of parenthood toward children of a spouse by another marriage is one favored by the law. They may be included under the descriptive word ‘family’ ”).

 See, e.g., G. L. c. 209B, § 5, inserted by St. 1983, c. 680, § 1 (rights of “persons acting as parents” to notice and the opportunity to be heard in child custody proceedings); G. L. c. 112, § 12E Vi, inserted by St. 2012, c. 244, § 10 (mandated notification of “other person[s] having custody or control of a minor child” where the minor is treated for drug or alcohol overdose); G. L. c. 175, § 123 (stepparents are authorized to include stepchildren as insured family members on joint life insurance policies); G. L. c. 118, § 1 (stepparents are included within the definition of parent for the purposes of public assistance); G. L. c. 119, § 21 (stepparents are included within the definition of relatives under the child protection statute).

 It was also in this context that the court commented that “[t]he key factors to a threshold showing of in loco parentis status are the intent to take over the position of parent, and the discharge of support and maintenance responsibilities toward the child.” O’Connor, 407 Mass. at 668. We do not interpret that passage as precluding fact finders from inferring a defendant’s “intent to take over the position of parent” from her actions and circumstances. Nor do we view it as requiring a defendant to prove that she is the family “bread winner.”

 The Commonwealth is incorrect in asserting that the defendant cannot claim in loco parentis status and the concomitant parental discipline instruction where she did not take the stand or otherwise put on her own case. The defendant was entitled to such an instruction if “any view of the evidence would provide support for an affirmative defense.” Commonwealth v. Monico, 373 Mass. 298, 299 (1977). See Commonwealth v. Eberle, 81 Mass. App. Ct. 235, 239 (2012) (evidence supporting an affirmative defense may come entirely from the Commonwealth’s case). Nor was the defendant precluded from requesting the instruction by her taking the position that she never in fact struck the daughter. See generally Commonwealth v. Callahan, 401 Mass. 627, 636 (1988) (recognizing that it can be a reasonable defense strategy for counsel to argue only one theory of defense to the jury and to leave it to the judge to instruct them on another).

 See also Commonwealth v. Clark, 393 Mass. 361, 366 (1984), which concerned a nonparent’s potential criminal liability for failing to obtain medical care for his partner’s child. The court reversed the dismissal of a criminal indictment, declining to hold on the undeveloped record that “only a parent, guardian or person entrusted with legal custody of a child” may have legal duties with regard to a child in the same household.

 This could have been accomplished by giving the full model parental discipline instruction available at the time, which referred to a “parent, or one acting in the position of a parent and who has assumed the responsibilities of a parent.” See note 3, supra. Presumably, the model instruction will be modified to include the additional teachings of Dorvil.

 The evidence supporting an affirmative defense need not come from a defense witness. See note 9, supra. In assessing whether a jury instruction was warranted, the question is whether “any view of the evidence would provide support for an affirmative defense.” Commonwealth v. Monico, 373 Mass. at 299.

 Police photographs of the daughter’s injuries were never entered in evidence because the Commonwealth failed to turn over the photographs in timely discovery. Our dissenting colleague has not explained how, even if the jurors credited the testimony that the daughter suffered a “scratch,” they were precluded as a matter of law from finding that the daughter suffered only a “minor, transient mark[ ].” Dorvil, 472 Mass. at 12.

 In Dorvil, the court concluded, as a matter of law, that a parent cannot be convicted of assault and battery for disciplining a disobedient two year old child by “smack[ing]” her on a clothed bottom. 472 Mass. at 13. Our dissenting colleague urges that we hold, again as a matter of law, that disciplining a disobedient fourteen year old by striking her ear cannot constitute reasonable parental discipline. If we were so to conclude, one would be left to wonder what role, if any, juries are to play in resolving what constitutes reasonable parental discipline.

 The trial judge in fact initially expressed his reservations about giving either party such an instruction, stating that he was “not convinced at this point that there’s sufficient evidence to raise this disciplinary defense.” However, as noted, the judge ultimately provided the father the requested instruction, and he deprived the defendant of the instruction solely because of his view that she could not show in loco parentis status. Thus, the judge ultimately rejected the Commonwealth’s argument that the evidence was insufficient to raise a parental discipline defense.

 The defendant also asserts error in the prosecutor’s closing. We need not address that claim, which is unlikely to arise in any retrial.