NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-1108

COMMONWEALTH

vs.

OLIVER WALSH.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant was convicted of armed robbery while masked in violation of G. L. c. 265, § 17.  On appeal, he claims that (1) a detective's testimony regarding a tip was impermissible hearsay that also violated the defendant's right to confront witnesses against him; (2) other parts of the detective's testimony were also hearsay and improperly corroborated other witnesses' testimony; and (3) the prosecutor's closing argument improperly bolstered witnesses, misstated evidence, and disparaged the defense.  We affirm.

Background.  In October 2017, a masked man and woman robbed a TD Bank in Holliston while armed with weapons, taking $4,700. Seven months later, the Federal Bureau of Investigation (FBI) offered a reward for information leading to an arrest in the case.  A tipster responded, sending an e-mail message from an

account associated with her name to Holliston police saying that she knew who committed the robbery. The tipster later told Detective Ciara Maguire of the Holliston police that an acquaintance of hers, whom the tipster identified by name, had admitted to carrying out the robbery with her boyfriend. That acquaintance subsequently confessed to robbing the bank with the defendant, Oliver Walsh, and entered into a cooperation agreement, pursuant to which she testified against the defendant at trial (cooperating codefendant).

Discussion. 1. Testimony about the tip. The defendant claims that Detective Maguire's testimony regarding the tip was inadmissible hearsay that violated the confrontation clause of the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. More specifically, the defendant alleges that the detective's testimony about an e-mail message she received from Holliston police Chief Matthew Stone contained multiple levels of hearsay because it also included the text of the tipster's e-mail message. He further challenges the detective's testimony about e-mail and text messages she exchanged with the tipster, and about the tipster's statements by phone that the cooperating codefendant and her boyfriend robbed the bank.

Because the defendant did not object to the testimony, our review is limited to whether its admission was error, and if so,

2

whether that error created a substantial risk of a miscarriage of justice. See Commonwealth v. Randolph, 438 Mass. 290, 297 (2002). The hearsay rule forbids the admission of out-of-court statements offered for their truth but allows such statements when offered for other valid purposes, including to show the state of police knowledge. See Commonwealth v. Cohen, 412 Mass. 375, 393 (1992) ("an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; [s]he should be allowed some explanation of [her] presence and conduct" [citation omitted]). See also Mass. G. Evid. § 801(c) (2023). Testimony may be used for this purpose subject to the limitations that it "is based on the police officer's own knowledge, and is limited to the facts required to establish the officer's state of knowledge, and the police action or state of police knowledge is relevant to an issue in the case." Commonwealth v. Sullivan, 478 Mass. 369, 376 (2017), citing Commonwealth v. Rosario, 430 Mass. 505, 509-510 (1999).

Here, the detective had personal knowledge of the statements because she received the e-mail message from Stone and personally communicated with the tipster. The progression of the investigation was also relevant to establishing the identity of the cooperating codefendant and the defendant as the two masked bank robbers. There were no suspects prior to the

3

tip, so describing the investigation made "the discovery of the actual evidence of identity seem more natural and less mysterious" (citation omitted). Commonwealth v. Perez, 27 Mass. App. Ct. 550, 554 (1989). The detective may have exceeded the second limitation by quoting the tipster's original e-mail message to Stone and recounting her identification of the cooperating codefendant and the defendant over the phone.[1] See, e.g., Commonwealth v. Rosario, 430 Mass. 505, 510 (1999) (statements admitted to show state of police knowledge generally should not "go beyond what is reasonably necessary to explain police conduct" and "a statement that an officer acted 'upon information received,' . . . or words to that effect" is sufficient [citations omitted]). However, even if the content of the e-mail message and phone call was hearsay, admitting it did not create a substantial risk of a miscarriage of justice.[2]

---

[1] During the phone call, the tipster told the detective the defendant's first name and that he lived one town over from the cooperating codefendant.

[2] The defendant's appellate brief alludes to a potential claim of ineffective assistance of counsel, stating that if an issue is not sufficiently preserved, counsel was ineffective. This claim fails, however, because the defendant has not shown a substantial risk of a miscarriage of justice. See Commonwealth v. Millien, 474 Mass. 417, 432 (2016). He was therefore not deprived of "an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

A substantial risk of a miscarriage of justice exists "if the evidence and the case as a whole [leaves] us with a serious doubt that the defendant['s] guilt ha[s] been fairly adjudicated." Commonwealth v. Amirault, 424 Mass. 618, 646-647 (1997). As defense counsel conceded at oral argument, the detective's testimony regarding the tipster's statements was cumulative of the cooperating codefendant's own properly admitted testimony. The cooperating codefendant testified that she met the tipster while they were in the same addiction treatment center and that she confided in the tipster about the robbery. She attested that Detective Maguire later contacted her and arranged a meeting, at which time the cooperating codefendant described the robbery in detail to the detective and an FBI agent. At the meeting and in her trial testimony, the cooperating codefendant identified the defendant as the second robber. Bank surveillance footage and testimony from other witnesses corroborated the cooperating codefendant's testimony about how the robbery unfolded. "The mistaken admission of hearsay evidence, if merely cumulative of another witness's testimony, does not constitute reversible error." Commonwealth v. O'Connor, 407 Mass. 663, 670 (1990). Moreover, even without the details of the tipster's statements, the Commonwealth's case against the defendant was strong. Compare Commonwealth v. Navarro, 474 Mass. 247, 259-260 (2016) (no substantial risk of

5

miscarriage of justice from missing instruction where defendant's coventurer identified him as armed and masked robber and where other evidence corroborated coventurer's testimony). We therefore are not left with serious doubt that excluding the tipster's statements would have changed the outcome of the trial.[3]  See Amirault, supra.

2.  Other hearsay claims.  The defendant claims that the detective's testimony regarding several other out-of-court statements was also inadmissible hearsay.  These include statements from the bank tellers, the bank manager, and the cooperating codefendant; the FBI bulletin announcing the reward; and the registry of motor vehicles (RMV) records that the detective searched.  However, these statements were admissible for nonhearsay purposes and cumulative of other evidence.

The detective's account of tellers' and manager's statements, the FBI bulletin, and the RMV records were admissible to show the state of police knowledge.  They were

_____

[3]  The defendant also contends that the detective improperly bolstered the tipster's statements.  It is true that "a witness cannot be asked to assess the credibility of his testimony or that of other witnesses." Commonwealth v. Dickinson, 394 Mass. 702, 706 (1985).  However, the detective stated only that the tip conformed to the investigation's prior findings, that the tipster said her information was valid, and that she wanted to "do the right thing."  Defense counsel did not object to these statements, and given the strength of the other evidence, we are not left with serious doubt that they influenced the verdict. See Amirault, 424 Mass. at 646-647.

6

based on the detective's personal knowledge, limited to the facts necessary to show what the police knew at the time, and relevant to how the police identified the defendant. See Rosario, 430 Mass. at 509-510. Regarding the cooperating codefendant's statements, the judge allowed the detective to testify only to details of the robbery that the cooperating codefendant knew but that the FBI bulletin had not made public. The judge also instructed the jury to disregard all but five of the cooperating codefendant's statements and to consider those five statements as proof of her knowledge of the robbery, not for their truth. See Mass. G. Evid. 803(3)(B)(i) (hearsay statements admissible to prove declarant's present state of mind or knowledge). Moreover, the detective's testimony about these statements was cumulative of other properly admitted evidence. Both tellers testified, and described how the robbery unfolded and the appearance of the robbers. The surveillance video showed the entire course of events inside the bank. And the cooperating codefendant testified in detail to how she and the defendant carried out the robbery. As such, any cumulative hearsay statements would not require reversal. See O'Connor, 407 Mass. at 670 (no prejudice to defendant where erroneously admitted hearsay added nothing to other testimony).

3. The prosecutor's closing argument. The defendant also claims that the prosecutor's closing argument impermissibly

7

vouched for the credibility of witnesses, misstated evidence, and disparaged the defense. Trial counsel did not object to the closing argument, so we review only for error, and if so, whether it created a substantial risk of a miscarriage of justice. See Commonwealth v. Pearce, 427 Mass. 642, 646 (1998). Because there was no error, there was no risk that justice miscarried.

The defendant claims that the prosecutor relied on special knowledge, outside the facts in evidence, by pointing out that the cooperating codefendant first confessed more than a year before she entered into a cooperation agreement. However, the defendant's closing argument challenged the cooperating codefendant's credibility on the basis that she lied in return for a reduced sentence. The prosecutor properly rebutted this contention and restated the evidence, including the cooperating codefendant's own testimony about her confession and the agreement.[4] See Commonwealth v. Ciampa, 406 Mass. 257, 265

_____

[4] The defendant further claims that the prosecutor improperly vouched for a second witness who testified pursuant to a grant of immunity. The defendant's closing argument called on the jury to question whether that witness may have lied despite his immunity agreement. The prosecutor properly countered that the agreement did not immunize the witness for perjury, rebutting the suggestion that the witness had any additional incentive to lie. See Commonwealth v. Ciampa, 406 Mass. 257, 265 (1989) ("a prosecutor may properly point out that an agreement seeking only the truthful cooperation of the witness does not give the witness any special incentive to lie").

8

(1989) (prosecutor may restate government's agreement with witness but may not suggest government can verify witness's testimony).

The defendant further challenges the prosecutor's use of the word "sophomoric" to refer to the defense's description of the cooperating codefendant's relationship with the defendant, claiming it was an ad hominem attack.  We disagree.  The defendant's closing argument described the relationship as "dysfunctional," with the defendant being a "jerk" throughout. The prosecutor's comment that this description did not reflect the reality of the relationship was within the bounds of proper argument.  See Commonwealth v. Simpson, 434 Mass. 570, 586 (2001) (no error where Commonwealth used "insult" to describe defense argument that lacked evidentiary support); Commonwealth v. Jackson, 428 Mass. 455, 463 (1998) ("It is settled law . . . that the prosecutor may comment on defense tactics that the jurors have witnessed themselves").  Contrast Commonwealth v. Gentile, 437 Mass. 569, 581 (2002) (Commonwealth improperly

disparaged defense strategy by referring to it as "despicable").

Judgment affirmed.

By the Court (Meade, Blake &
Brennan, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered:   July 13, 2023.

---

[5] The panelists are listed in order of seniority.