NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11738

COMMONWEALTH  vs.  JEAN G. DORVIL.


Plymouth.     February 5, 2015. - June 25, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly,
& Lenk, JJ.


Assault and Battery.  Parent and Child, Discipline.  Child
    Abuse.



Complaint received and sworn to in the Brockton Division of
the District Court Department on May 16, 2011.

The case was heard by Julie J. Bernard, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Jacob B. Stone for the defendant.
Audrey Anderson, Assistant District Attorney, for the
Commonwealth.
Rebecca Kiley, Committee for Public Counsel Services, for
Committee for Public Counsel Services, amicus curiae, submitted
a brief.


LENK, J.  We are called upon in this case, where the

defendant stands convicted of assault and battery for spanking

his minor child, to examine the contours of a parental privilege

defense.  On appeal, the defendant contends that the use of force to control and discipline his child in the circumstances was justified, excusing him from liability for conduct that otherwise would constitute a crime.  Although we have on several prior occasions assumed that such a common-law privilege exists, we have neither expressly recognized it nor considered its proper scope.  We do so today, deeply mindful of the dual important interests implicated in the defense:  the welfare of children requiring protection against abuse, on the one hand, and, on the other, the avoidance of unnecessary State interference in parental autonomy as it concerns child rearing.[1]

1.  Background.  a.  Overview.  After a jury-waived trial, the defendant was convicted of assault and battery for spanking his daughter, then almost three years old.  He also was convicted of threatening to commit a crime, based on his conduct while he was held at the police station following his arrest.  He was acquitted of two other charges stemming from the same series of events.

In his appeal to the Appeals Court, the defendant argued, among other things, that the evidence was insufficient to sustain a conviction of assault and battery in light of the parental privilege to use force in disciplining a minor child.

---

[1] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services on behalf of the defendant.

The Appeals Court, in an unpublished memorandum and order issued pursuant to its rule 1:28, determined that the defendant's conduct fell outside of the parental privilege defense and affirmed the defendant's convictions. See Commonwealth v. Dorvil, 85 Mass. App. Ct. 1117 (2014). We granted further appellate review, limited to the assault and battery conviction, to clarify the scope of the parental privilege defense. We now reverse that conviction.[2]

b. Facts. We recite the facts based on the evidence introduced at trial. We construe the evidence offered to support the defendant's conviction of assault and battery in the light most favorable to the Commonwealth. Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). We note conflicting testimony where relevant in light of the defendant's acquittal of certain charges.

The Brockton police station sits across the street from the Brockton Area Transit bus terminal. At shortly before 4 P.M. on May 13, 2011, Detective Ernest S. Bell of the Brockton police department was arriving at the police station at the end of his eight-hour shift; at the same time, Lieutenant Mark Porcaro was arriving to begin his eight-hour shift. Both officers observed

_____

[2] As stated in the Appeals Court's memorandum and order, the judgment on the count of the complaint charging threatening to commit a crime is affirmed.

a commotion at the bus terminal, although their accounts of the incident at trial differ somewhat.

Bell testified that he observed the defendant yelling, "[S]hut up, shut up," at a young child and a woman while walking on the sidewalk near the bus station. Bell then saw the defendant kick the child in the backside. He described the kick as "kind of like a football kick," and indicated that the defendant was wearing sneakers at the time. The defendant then shouted, "[S]hut up," again before bending over and "smack[ing] the child on the buttocks." Right after the kick and the smack, Bell observed the woman bend down and pick up the child; Bell testified that he regarded this as an effort "to shield" the child from the defendant. Throughout the incident, according to Bell, the defendant appeared "very upset" and "angry," and he was shouting sufficiently loudly to be audible at the police station, approximately thirty-five yards away. Bell indicated that the child was crying and "looked frightened."

Porcaro also observed the defendant yelling at the woman and child, and saw the defendant kick the child. Porcaro, however, testified that the kick "wasn't like a full blown, swift kick"; instead, he said, "it was . . . slow and there was almost like a hesitation to it, but he eventually came . . . up and made contact with the girl." Additionally, although the police report that Porcaro completed following the arrest

indicated that he saw the defendant hit the child, he testified at trial that he did not have any memory of the child being hit.

The police officers approached the trio and separated the defendant from the woman and the child. The defendant, the child's father, denied kicking the child, instead saying that he was "just playing around with her." With respect to the spanking, the defendant indicated that he was "disciplining his child." The child's mother, Crystal Steele, likewise stated that the defendant and the child were "horseplaying," but that the defendant then became upset when the child was disobedient.

The defendant was arrested, brought to the police station for booking, and placed in a holding cell. Six hours later, at approximately 10 P.M. that evening, Porcaro had another encounter with the defendant; their accounts of the encounter again differ. Porcaro testified that, while he was administering to a prisoner with a medical emergency in a nearby holding cell, the defendant began talking, yelling at him and another officer, and spitting on the plexiglass. According to Porcaro, the defendant claimed that Porcaro was "lying about seeing him kick the girl," called Porcaro various insulting names, and indicated that "he wanted to box" Porcaro.

The defendant testified in his own defense at trial, along with Steele. The defendant denied calling Porcaro names, and denied yelling or spitting at the officers. The defendant did

testify, however, that he told Porcaro, "[I]f you know where there's a ring around here, . . . we can go box it out."  The defendant insisted that this was not meant as a threat.

As to the initial incident at the bus terminal, the defendant and Steele offered accounts at trial that were essentially similar to one another and to the accounts that they gave to the police officers at the scene.  The defendant stated that, after the trio got off the bus, he was playing a game where he chased his daughter and lifted her up with his legs, "like [he] was playing soccer."  He continued in that manner for a period, chasing his daughter and yelling loudly at her.  He indicated that at the time she was "happy," explaining, "[S]he likes when I play like that with her."

The defendant then told his daughter to go to her mother. She responded, "[N]o," telling him, "[Y]ou go to your mother." He chastised her for talking back to him.  He cautioned that he would spank her if she continued talking back, saying, "[D]addy will pow pow, if you don't stop."  He then "tapped her" on "her butt" in an effort to make her "calm down."  The defendant testified that the child never fell down or began crying, either when they were playing or when he spanked her.  He also denied ever telling his daughter to "shut up."

Steele similarly testified that, after the defendant and the child got off the bus, they were "playing . . . very

loudly," and that she had seen the defendant and their daughter "play together in a similar manner in the past." The defendant then told the child to go to her mother; Steele explained that the child "was running around," and speculated that the defendant "didn't want her to run into . . . the street or anything." The defendant then told his daughter, "[W]e're not playing anymore," and "gave her a little tap on her behind." Steele indicated that the child was not crying and did not appear fearful when she picked up the child after the spanking.

c. Proceedings. The defendant was charged with assault and battery by means of a dangerous weapon (a shod foot), based on the kick; assault and battery, based on the spanking; and witness intimidation and threatening to commit a crime, based on the defendant's statements indicating his desire to "box" Porcaro at the police station. Defense counsel argued in closing that there had been no kick, and, as the defendant and Steele testified, the defendant simply had been playing with the child. As to the second count, counsel conceded that the "pat on the butt" did occur, but asserted that the pat was permissible because the defendant had "a right to use reasonable force in disciplining [his] child." As to the third and fourth counts, counsel argued that there was no evidence that the defendant "had a specific intent to try to influence the outcome of an investigation or a criminal action or prosecution," and

that the evidence failed to show that the defendant "intended to harm and place . . . Porcaro in fear."

After closing arguments, the judge denied the defendant's renewed motion for a required finding of not guilty. The judge found the defendant guilty of assault and battery and threatening to commit a crime, and not guilty of assault and battery by means of a dangerous weapon and witness intimidation. The judge issued no written findings of fact or conclusions of law. Her remarks at sentencing, however, provide some indication of her thinking.

The judge acknowledged that "it's not easy being a parent." She indicated that the defendant had not been convicted for the kick, noting that, in light of the inconsistency between the police officers' testimony, the defendant "could've been playing around with [his] daughter." The judge explained her decision to convict the defendant of assault and battery, however, by observing that, while she did not "think [the defendant] intended to kick [his] daughter, . . . [he] did hit her." In apparent response to the defendant's argument that the spanking was permissible in light of his parental privilege to use reasonable force in disciplining the child, the judge concluded that, "[i]f you're in public with your kids, it's not appropriate to discipline in this fashion."

The defendant appealed. He challenged the sufficiency of

the evidence to support each conviction, argued in particular that the evidence to support the conviction of assault and battery was insufficient in light of the parental privilege defense, and contended that certain statements in the Commonwealth's closing argument were not supported by the evidence.  The Appeals Court affirmed.  With respect to the assault and battery conviction, the Appeals Court acknowledged that it previously had held that a parent may use reasonable force to discipline his or her minor child.  The court determined, however, that the evidence indicated that the child lacked the capacity to understand the discipline, and that the "defendant spanked his child when he was upset and angry and not in a calm and controlled manner, as required for parental discipline to fall within the reasonable force defense."  We granted further appellate review, limited to the question of the sufficiency of the evidence to support the conviction of assault and battery.

2.  Discussion.  "The punishments for the crimes of assault and assault and battery . . . are established by statute, but the elements necessary to convict a person of these crimes are determined by the common law."  Commonwealth v. Porro, 458 Mass. 526, 529 (2010).  "An assault and battery is the intentional and unjustified use of force upon the person of another, however slight . . . ."  Commonwealth v. McCan, 277 Mass. 199, 203

(1931). In accordance with the crime's common-law character, we have turned to the common law to articulate defenses to a charge of assault and battery, such as the justification of self-defense, see Commonwealth v. Shaffer, 367 Mass. 508, 511 (1975), or defense of another, see Commonwealth v. Martin, 369 Mass. 640, 646-647 (1976).

This court has not expressly recognized a parental privilege defense to use force in disciplining a child, nor have we articulated the scope of any such privilege. We have, however, alluded to the privilege on several occasions. See Commonwealth v. Rodriguez, 445 Mass. 1003, 1004 (2005), cert. denied, 548 U.S. 924 (2006) (observing that court has "not addressed the issue [of the parental privilege defense] one way or the other," and determining that defendant's request for jury instruction on that defense "[would] be best addressed on remand"); Commonwealth v. Torres, 442 Mass. 554, 568 n.11 (2004) (rejecting defendant's contention that trial judge erred in failing to give instruction regarding parental privilege defense; "[o]n any view of the evidence, [the] frequent beating of . . . very young children . . . would not come within that privilege"); Commonwealth v. O'Connor, 407 Mass. 663, 664, 667, 669 (1990) (where defendant was convicted of assault and battery on fourteen year old daughter of his girl friend, observing that "[n]o Massachusetts decision or statute grants parents or others

a right to use reasonable force in disciplining a child," and concluding that defendant could not avail himself of such privilege in any event because he did not stand "in loco parentis to the victim"); Commonwealth v. Coffey, 121 Mass. 66, 68-69 (1876) (noting defense of "father's parental right and authority," but concluding that evidence supported jury's finding that force used was "excessive and unjustifiable," or that "acts were not done in the exercise or support of the rightful authority of the father, but in the execution of a scheme of" another).

The Appeals Court, by contrast, has expressly recognized a parental privilege defense, although the court confronted the issue in an ancillary context, and its treatment of the privilege was consequently not exhaustive. In Commonwealth v. Rubeck, 64 Mass. App. Ct. 396, 396-397 (2005), the defendant was convicted of assault and battery for her conduct towards her two year old son in the waiting room of a medical center. The defendant argued that her attorney had provided ineffective assistance in failing to request a jury instruction stating that a "parent, or one acting in the position of a parent and who has assumed the responsibilities of a parent, may use reasonable force to discipline (his/her) minor child. However, a parent may not use excessive force as a means of discipline or chastisement." Id. at 399-400, quoting Massachusetts Superior

Court Criminal Practice Jury Instructions § 3.15 (Mass. Cont. Legal Educ. 1st Supp. 2003). The Appeals Court concluded that "the instruction was warranted," although the court affirmed the defendant's conviction because it determined that the omission of the jury instruction did not produce a substantial risk of a miscarriage of justice. Commonwealth v. Rubeck, supra at 400-401.

Despite the lack of express recognition by this court, a privilege to use reasonable force in disciplining a minor child has long been recognized at common law. Blackstone, for instance, remarked that "battery is, in some cases, justifiable, or lawful; as where one who hath authority, a parent or a master, gives moderate correction to his child, his scholar, or his apprentice." 3 W. Blackstone, Commentaries *120. A mid-Nineteenth Century commentator similarly observed that parents have a duty "to maintain and educate their children," and possess the concomitant "right to the exercise of such discipline as may be requisite for the discharge of their sacred trust." J. Kent, Commentaries on American Law 203 (O.W. Holmes, Jr., ed., 12th ed. 1873).

In a number of States, the parental privilege defense has been codified by statute; in others, it remains a common-law doctrine. See Johnson, Crime or Punishment: The Parental Corporal Punishment Defense -- Reasonable and Necessary, or

Excused Abuse?, 1998 U. Ill. L. Rev. 413, 440-446 (Johnson). In either instance, "[a]ll American jurisdictions allow parents to use at least moderate or reasonable physical force when they reasonably believe that such force is necessary to control their children." State v. Wilder, 748 A.2d 444, 455 (Me. 2000). Neither the Commonwealth nor the Committee for Public Counsel Services, appearing before the court in this case as amicus curiae, has argued that the court should not recognize a parental privilege defense at all.

The widespread recognition of a parental privilege defense accords with important constitutional values. The United States Supreme Court has long held that the due process clause of the Fourteenth Amendment to the United States Constitution protects "the liberty of parents and guardians to direct the upbringing and education of children under their control." Pierce v. Society of Sisters, 268 U.S. 510, 534-535 (1925). See Meyer v. Nebraska, 262 U.S. 390, 400 (1923). Indeed, "the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." Troxel v. Granville, 530 U.S. 57, 65 (2000) (plurality opinion). See Santosky v. Kramer, 455 U.S. 745, 753 (1982) (recognizing "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child"); Quilloin v.

Walcott, 434 U.S. 246, 255 (1978) (observing, "[w]e have recognized on numerous occasions that the relationship between parent and child is constitutionally protected"); Stanley v. Illinois, 405 U.S. 645, 651 (1972) (indicating, "[i]t is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect' . . ." [citation omitted]).

The use of moderate corporal punishment to discipline one's children is viewed by many in our country as an integral aspect of parental autonomy that furthers the welfare of those children. Indeed, while surveys suggest that support for corporal punishment has declined in the United States over the past one-half century, substantial majorities of parents continue to say that spanking is sometimes necessary to discipline children. See Hanes, To Spank or Not to Spank, Corporal Punishment in the U.S., Christian Sci. Monitor (Oct. 19, 2014); Reeves & Cuddy, Hitting Kids: American Parenting and Physical Punishment, Brookings Inst. Long Memos No. 4 (Nov. 6, 2014), http://www.brookings.edu/blogs/social-mobility-memos/posts/2014/11/06-parenting-hitting-mobility-reeves [http://perma.cc/2H8A-W6JX]. Of course, others "believe that parents should not use physical force to control their children"; indeed, "[a]t least nine countries ban corporal punishment of children." State v. Wilder, 748 A.2d at 457 n.13.

Notwithstanding these contrary views and disputes as to the efficacy of such parenting techniques, the long-standing and widespread acceptance of such punishment remains firmly woven into our nation's social fabric. It follows that we must guard against the imposition of criminal sanctions for the use of parenting techniques still widely regarded as permissible and warranted.

The parental right to direct the care and upbringing of children, however, is far from absolute. Although a "child is not the mere creature of the [S]tate," Pierce v. Society of Sisters, 268 U.S. at 535, our law has long rejected "the notion that children [are] the property of their parents." Custody of Kali, 439 Mass. 834, 840 (2003). Accordingly, this court has recognized that a parent's right to direct the care and upbringing of minor children may be limited in light of the State's "compelling interest [in] protect[ing] children from actual or potential harm." Blixt v. Blixt, 437 Mass. 649, 656 (2002), cert. denied, 537 U.S. 1189 (2003). This interest is particularly powerful in the context of corporal punishment, given the risk that the parental privilege defense will be used as a cover for instances of child abuse.

In the absence of legislation delineating the scope of the parental privilege defense, therefore, we must articulate a framework that respects a parent's primary responsibility to

direct the care and upbringing of a child, while protecting the child against abuse and endangerment. Otherwise put, the parental privilege defense must strike a balance between protecting children from punishment that is excessive in nature, while at the same time permitting parents to use limited physical force in disciplining their children without incurring criminal sanction. A survey of other jurisdictions' articulations of the parental privilege defense reveals three types of approaches to this balance. See Johnson, supra at 440-446. The first type of approach requires that the force "be judged by an objective standard of reasonableness," id. at 442, and typically provides that a "parent is privileged to apply such reasonable force . . . as he [or she] reasonably believes to be necessary for [the child's] proper control, training, or education." Restatement (Second) of Torts § 147 (1965).[3] The

---

[3] For examples of this approach, see Ala. Code. § 13A-3-24 (permitting "reasonable and appropriate physical force"); Ariz. Rev. Stat. § 13-403(1) (same); Ark. Code Ann. § 5-2-605 (same); Colo. Rev. Stat. § 18-1-703 (same); Conn. Gen. Stat. § 53a-18 (permitting "reasonable physical force"); Ga. Code Ann. § 16-3-20 (permitting "the reasonable discipline of a minor by his parent or a person in loco parentis"); La. Rev. Stat. Ann. 14:18(4) (permitting "reasonable discipline of minors by their parents, tutors or teachers"); Mich. Comp. Laws. § 750.136b(9) (in child abuse statute, providing that "[t]his section does not prohibit a parent or guardian, or other person permitted by law or authorized by the parent or guardian, from taking steps to reasonably discipline a child, including the use of reasonable force"); Minn. Stat. § 609.06 (permitting "reasonable force"); Mont. Code Ann. § 45-3-107 (permitting "the use of force that is reasonable and necessary to restrain or correct the person's

child, ward, apprentice, or pupil"); Okla. Stat. tit. 21, § 643 (permitting parental "use of force or violence" provided it "is reasonable in manner and moderate in degree"); Or. Rev. Stat. § 161.205 (permitting "reasonable physical force . . . to the extent the person reasonably believes it necessary to maintain discipline or to promote the welfare of the minor or incompetent person"); S.D. Codified Laws § 22-18-5 (permitting force provided it is "reasonable in manner and moderate in degree"). See also Newby v. United States, 797 A.2d 1233, 1241 (D.C. 2002) (recognizing "parent's privilege to use reasonable force to discipline her minor child without being subjected to criminal liability"); Raford v. State, 828 So. 2d 1012, 1020 (Fla. 2002) ("a parent may assert as an affirmative defense his or her parental right to administer 'reasonable' or 'nonexcessive' corporal punishment"); People v. Ball, 58 Ill. 2d 36, 40 (1974) (determining that use of force by parents and teachers is to be analyzed under "a reasonableness standard"); Willis v. State, 888 N.E.2d 177, 182 (Ind. 2008) ("A parent is privileged to apply such reasonable force . . . upon his [or her] child as he [or she] reasonably believes to be necessary for its proper control, training, or education" [citation omitted]); State v. Arnold, 543 N.W.2d 600, 603 (Iowa 1996) (holding that "parents have a right to inflict corporal punishment on their child, but that right is restricted by moderation and reasonableness"); Bowers v. State, 283 Md. 115, 126 (1978) (adopting "well-recognized precept of Anglo-American jurisprudence that the parent of a minor child or one standing in Loco parentis was justified in using a reasonable amount of force upon a child for the purpose of safeguarding or promoting the child's welfare"); State v. Suchomski, 58 Ohio St. 3d 74, 75 (1991) (holding that "[a] child does not have any legally protected interest which is invaded by proper and reasonable parental discipline"); Newman v. State, 298 P.3d 1171, 1179 (Nev. 2013) ("The parental privilege defense comes down to punishment -- was it cruel or abusive -- or did it amount to a parent's use of reasonable and moderate force to correct his child?" [citations, quotations, and alterations omitted]); State v. Thorpe, 429 A.2d 785, 788 (R.I. 1981) (recognizing that "a parent has a right to use reasonable and timely punishment as may be necessary to correct faults in his/her growing children"); Harbaugh v. Commonwealth, 209 Va. 695, 697-698 (1969) (holding that "parents or persons standing in loco parentis may administer such reasonable and timely punishment as may be necessary to correct faults in a growing child"); Keser v. State, 706 P.2d 263, 270 (Wyo. 1985) (recognizing parental privilege defense where "a parent in punishing his children . . . act[s] in good faith with parental

second type of approach omits the reasonableness requirement, instead granting a general privilege to use force while defining specific types of force as impermissible.  Johnson, supra at 442-443.[4]

Finally, some jurisdictions employ a third approach that combines features of the first two.  See Johnson, supra at 443-444.  These jurisdictions follow the first approach in requiring that the force used be objectively reasonable, while following the second in identifying certain types of force as invariably unreasonable.  Some jurisdictions adopting this approach only identify "deadly force" as inherently unreasonable.[5]  Others, borrowing from the Model Penal Code, specifically prohibit force that "create[s] a substantial risk of death, serious bodily

---

affection, [does] not exceed the bounds of moderation, and [is] not . . . cruel or merciless" [citation omitted]).

[4] See Ky. Rev. Stat. Ann. § 503.110 (exempting force "designed to cause or known to create a substantial risk of causing death, serious physical injury, disfigurement, extreme pain, or extreme mental distress"); Neb. Rev. Stat. § 28-1413 (exempting force "designed to cause or known to create a substantial risk of causing death, serious bodily harm, disfigurement, extreme pain or mental distress, or gross degradation"); N.J. Stat. Ann. § 2C:3-8 (exempting "[d]eadly force"); 18 Pa. Cons. Stat. § 509 (exempting force "designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation").

[5] See Alaska Stat. § 11.81.430; N.Y. Penal Law § 35.10; Tex. Penal Code § 9.61.

injury, disfigurement, or gross degradation."[6]  Still others
provide an extensive list of impermissible forms of corporal
punishment,[7] or provide that "the physical force applied to the
child may result in no more than transient discomfort or minor
temporary marks on that child."[8]

We conclude that a combined approach best balances the

---

[6] N.D. Cent. Code § 12.1-05-05.  See Del. Code Ann. tit. 11
§ 468; Mo. Rev. Stat. § 563.061 (exempting force "designed to
cause or believed to create a substantial risk of causing death,
serious physical injury, disfigurement, extreme pain or extreme
emotional distress"); N.H. Rev. Stat. Ann. § 627:6 (excluding
"the malicious or reckless use of force that creates a risk of
death, serious bodily injury, or substantial pain"); Utah Code
Ann. § 76-2-401 (prohibiting the parental privilege defense "if
the offense charged involves causing serious bodily
injury, . . . serious physical injury, . . . or the death of the
minor"); Wis. Stat. § 939.45 (exempting "force which is intended
to cause great bodily harm or death or creates an unreasonable
risk of great bodily harm or death").  See also Model Penal Code
§ 3.08.

[7] See Del. Code Ann. tit. 11, § 468 (specifically
prohibiting "[t]hrowing the child, kicking, burning, cutting,
striking with a closed fist, interfering with breathing, use of
or threatened use of a deadly weapon, prolonged deprivation of
sustenance or medication"; Haw. Rev. Stat. § 703-309
(prohibiting "throwing, kicking, burning, biting, cutting,
striking with a closed fist, shaking a minor under three years
of age, interfering with breathing, or threatening with a deadly
weapon"); Wash. Rev. Code § 9A.16.100 (permitting force "when it
is reasonable and moderate," while identifying certain forms of
force as "presumed unreasonable . . . : (1) Throwing, kicking,
burning, or cutting a child; (2) striking a child with a closed
fist; (3) shaking a child under age three; (4) interfering with
a child's breathing; (5) threatening a child with a deadly
weapon; or (6) doing any other act that is likely to cause and
which does cause bodily harm greater than transient pain or
minor temporary marks").

[8] Me. Rev. Stat. Ann. tit. 17-A, § 106.  See Wash. Rev. Code
§ 9A.16.100.

parental right to direct the care and upbringing of a child with the Commonwealth's interest in protecting children from abuse. Accordingly, we hold that a parent or guardian may not be subjected to criminal liability for the use of force against a minor child under the care and supervision of the parent or guardian, provided that (1) the force used against the minor child is reasonable; (2) the force is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct; and (3) the force used neither causes, nor creates a substantial risk of causing, physical harm (beyond fleeting pain or minor, transient marks), gross degradation, or severe mental distress.  By requiring that the force be reasonable and reasonably related to a legitimate purpose, this approach effectively balances respect for parental decisions regarding the care and upbringing of minor children with the Commonwealth's compelling interest in protecting children against abuse.  By additionally specifying certain types of force that are invariably unreasonable, this approach clarifies the meaning of the reasonableness standard and provides guidance to courts and parents.

In applying the framework, each of the three prongs constitutes a question for the trier of fact.  In evaluating the reasonableness of the force used, and of the relation of that

force to a permissible parental purpose (the first two prongs of the test), the trier of fact may consider, among other factors, the child's "age, the "physical and mental condition of the child," and "the nature of [the child's] offense."  See Restatement (Second) of Torts, supra at § 150.  In evaluating the third of the three, the trier of fact must decide whether the force used or the risk of injury it created was, in context, sufficiently "extreme" as to be inherently impermissible.  See Model Penal Code and Commentaries § 3.08 commentary, at 140 (1985).  As with other affirmative defenses, where the parental privilege defense is properly before the trier of fact, the Commonwealth bears the burden of disproving at least one prong of the defense beyond a reasonable doubt.  Cf. Commonwealth v. Glacken, 451 Mass. 163, 167 (2008); Commonwealth v. Rodriguez, 370 Mass. 684, 687-688 (1976); Willis v. State, 888 N.E.2d 177, 182 (Ind. 2008).

Having articulated this framework, we conclude that the evidence adduced at the defendant's trial was insufficient to sustain a conviction of assault and battery.  Bell testified that he witnessed the defendant "smack[]" the child once on her clothed bottom.  The defendant and the child's mother testified that he administered the spanking because the child disobeyed his direction to go to her mother, and continued playing on the sidewalk near the street.  The Commonwealth offered no evidence

that this "smack" resulted in any injury to the child.  Under these circumstances, the Commonwealth failed to offer evidence sufficient to prove beyond a reasonable doubt that the defendant's use of force was unreasonable or not reasonably related to a permissible parental purpose.

The Commonwealth offers two arguments in support of the contrary conclusion.  First, the Commonwealth asserts that the judge could have found "that the defendant in his angry state was not disciplining the child at all, but struck her out of anger and frustration."  That remark finds support in Commonwealth v. Rubeck, 64 Mass. App. Ct. at 400-401, where the Appeals Court, in affirming the defendant's conviction of assault and battery on her two year old son, observed that "there was evidence that [the defendant] did not use reasonable force in a calm, nonviolent and controlled manner to train or educate her two year old child, but rather that she screamed, yelled and used unreasonable force, that she was frustrated and out of control, and that the use of force escalated and continued as [the defendant] grew more angry and frustrated."

It is true that certain older decisions from other jurisdictions granted wide leeway to parental authority, so long as parents did not act with "malice."  See, e.g., State v. Jones, 95 N.C. 588, 592 (1886) ("The test, then, of criminal responsibility is the infliction of permanent injury by means of

the administered punishment, or that it proceeded from malice, and was not in the exercise of a corrective authority").  See also Johnson, supra at 435.  The view under which the availability of the parental privilege defense hinges on a parent's subjective state, however, finds scant support in modern law, and we reject it.  Model Penal Code and Commentaries § 3.08 commentary, at 140 ("Older decisions tended to treat the motive of the actors as decisive . . . .  Modern authority has tended towards a more objective test of moderation").

As a means of balancing parents' right to direct the upbringing of their children against the State's compelling interest in protecting children from abuse, a focus on a parent's emotional state is at once over- and underinclusive. It is understandable that parents would be angry at a child whose misbehavior necessitates punishment, and we see no reason why such anger should render otherwise reasonable uses of force impermissible.  Conversely, we see no reason why the Commonwealth should be barred from protecting children against unreasonable methods of discipline -- methods that, for instance, threaten serious physical or emotional injury -- simply because it lacks evidence that a parent acted from anger. As the facts of this case aptly demonstrate, moreover, interactions between parents and children may appear ambiguous to outside observers and are susceptible to misinterpretation,

leading to significant difficulties of proof at trial and heightened risk of wrongful convictions.

Second, the Commonwealth notes that the child at issue here was two years old at the time of the spanking, and cites dicta from Commonwealth v. Rubeck, 64 Mass. App. Ct. at 400, indicating that "physical chastisement for preservation of discipline might never be justified in the case of a child of two years." While we agree that a child's age is one among a number of factors to be considered in assessing the reasonableness of corporal punishment, we reject a bright-line cutoff age below which any corporal punishment is impermissible. The child here was approximately one and one-half months away from her third birthday at the time of the incident. According to her mother's uncontroverted testimony, she spoke "very well," communicated "in full sentences," and was "very advanced for her age." Indeed, her response to her father's direction that she go to her mother -- "[N]o, you go to your mother" -- evinces a well-developed verbal acuity. According to the defendant's testimony, moreover, he warned the child of the impending punishment before administering it, stating that "daddy will pow pow, if you don't stop." Under these circumstances, the Commonwealth failed to offer sufficient evidence to prove that the defendant's use of force was impermissible because the child lacked the capacity to understand or appreciate the reason for

the punishment.  Accordingly, we reverse the defendant's conviction of assault and battery.

3.  Conclusion.  We recognize that the balance we strike with the parental privilege defense may well be imperfect and that absolute equipoise between the goals of protecting the welfare of children and safeguarding the legitimate exercise of parental autonomy is likely unattainable.  To the extent that that is so, the balance will tip in favor of the protection of children from abuse inflicted in the guise of discipline.

Judgment reversed.