ENGLANDER, J. (concurring).
I concur in the court's affirmance of the conviction, but for reasons different than the majority opinion. As this case shows, the cases in this area can be difficult -- where the courts are asked to apply the laws of criminal assault in the context of the parent-child relationship, and where the law provides that a parent may use reasonable force to discipline one's child. I write separately to make three points.
First, I would rest the affirmance on prong one of the standard articulated in Commonwealth v. Dorvil, 472 Mass. 1, 12, 32 N.E.3d 861 (2015), and conclude that there was sufficient evidence of unreasonable force here. Specifically, the CVS employee's testimony that the defendant "lifted his foot" and "kicked" his five year old daughter "in the chest" is sufficient evidence of unreasonable force under the standard of review of Commonwealth v. Latimore, 378 Mass. 671, 676-677, 393 N.E.2d 370 (1979).
That said, however, it is worth noting that the evidence of unreasonable force here was thin. Indeed, the majority does not rest its analysis on prong one. See ante at ----, 114 N.E.3d at ----. The child was uninjured. She went down on her behind, but got up immediately. There was no further evidence presented as to the force of the "kick," just the characterization itself. There was no evidence as to whether the defendant extended his leg with any velocity, or merely pushed the child back. The surveillance video does not show this. When asked at oral argument, the Commonwealth could cite no other case, from any jurisdiction, where a parent had been convicted of assault and battery on their child upon a comparable showing of force, with no injury.[1] ,[2]
*121 *469 Second, I disagree with the majority over prong two of the Dorvil standard, although my disagreement is more with the standard itself than its application here. Prong two asks whether "the force is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct." Dorvil, 472 Mass. at 12, 32 N.E.3d 861. This is the prong on which the majority rests its decision. See ante at ----, 114 N.E.3d at ----. The majority concludes that the parental privilege is overcome because, in its view, there was sufficient evidence to conclude that what this father did was not reasonably related to "prevention ... of the [child's] misconduct." Ante at ----, 114 N.E.3d at ----.
I am troubled by the prong two requirement. Under prong one, a parent asserting the parental privilege must already show that any force he or she used on the child was "reasonable." Prong two asks a different question, and it is whether the parent has also shown that the force used was reasonable discipline-- that is, that the force was reasonable for the purpose of promoting the welfare of the child, including the prevention or punishment of misconduct. See Dorvil, 472 Mass. at 12, 32 N.E.3d 861. The prong two requirement thus sets up the possibility that a parent will have shown that the force used was reasonable under prong one, but nevertheless is convicted of assault because (in the fact finder's judgment) the parent's reasonable force was not reasonably related to disciplining the child.
Viewed in this light, the second prong can be understood as an invitation to pass judgment on how a parent has chosen to parent. In my view, the courts should tread lightly in this area. Whether discipline is required, and how to render it effectively, are complex questions that vary greatly from child to child, year to year, moment to moment. The law should give substantial leeway to parents to make those judgments, and it should allow for a range of differences in parenting philosophy, as well. I do not think the parental privilege should be overcome solely because the fact finder concludes that the parent's use of force, although reasonable, did not meet its view of what was appropriate discipline.
This case illustrates the issue. There was objective evidence that the child was misbehaving, and was in need of control. She *470 had traveled ahead of her father in a downtown area. She later started to leave the CVS building alone, heading for a downtown street. She was uncontrolled for fifteen minutes or more. The majority nevertheless concludes that there was sufficient evidence to find that the discipline the father employed was inappropriate -- not "reasonably related to ... prevention or punishment of the [child's] misconduct." Ante at ----, 114 N.E.3d at ----. In accordance with prong two, however, the majority's analysis does not rest on the nature of the force used, but rather rests on the evidence of how the father explained his *122 actions. In this way the courts become involved, unnecessarily in my view, in evaluating the parent's judgment about how to discipline their child.[3]
Third, I note that the Commonwealth's evidence and argument in this case focused unduly on what the defendant said to his child, rather than what he did. The testimony emphasized that the defendant was loud, profane, and offensive, and that he swore directly at his young children. The prosecutor carried this theme into closing, and indeed spent the bulk of his time on it.[4]
There are two problems with the prosecutor's emphasis on the defendant's speech. The first is that the prosecutor employed it to argue that the defendant was angry, but the court in Dorvil specifically held that the parental privilege defense does not hinge on the parent's subjective state of mind, including whether the parent acted out of anger. See Dorvil, 472 Mass. at 13-14, 32 N.E.3d 861. Accord Commonwealth v. Packer, 88 Mass. App. Ct. 585, 593-594, 39 N.E.3d 753 (2015). The second problem is that the offensiveness of the defendant's speech is not relevant to a prosecution for assault and battery with a dangerous weapon. While what the defendant said may be relevant to certain elements of the parental privilege defense, the fact that what he said was offensive, *471 was not. See, e.g., Cohen v. California, 403 U.S. 15, 18-26, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (defendant could not be criminally prosecuted for wearing T-shirt saying "Fuck the Draft").
With the foregoing reservations, I concur in the affirmance.[5]

As the majority notes, the trial judge found the defendant "not guilty" of reckless endangerment, and in doing so expressly found that the defendant did not "engage[ ] in conduct which created a substantial and unjustifiable risk of serious bodily injury ...."

Our case law is not yet very developed as to what force can qualify as "unreasonable." Dorvil, 472 Mass. at 3, 13, 32 N.E.3d 861, holds that "smacking [a] child on the [clothed] buttocks" -- a spank, if you will -- falls within the parental privilege. Commonwealth v. Dobson, 92 Mass. App. Ct. 355, 357-359, 85 N.E.3d 689 (2017), on the other hand, involved the striking of a child in the face with a belt, such that it left a mark, which was sufficient evidence of unreasonable force to overcome the privilege. This case falls between those fact patterns.

The majority points out that the privilege derives from parenting, and thus the use of force must be shown to be related to parenting (hence, prong two). Perhaps, but I am not sure why the requirement of "reasonable" force in prong one does not serve that purpose. By using the word "reasonable" in both prong one and prong two, the standard sets up two separate requirements, and invites a separate evaluation whether the force used was appropriate as discipline. See Dorvil, 472 Mass. at 12-13, 32 N.E.3d 861. The requirement also gives rise to the risk -- inherent in the standard -- that less articulate parents will have more difficulty justifying their actions.

For example, the prosecutor argued: "[F]rom the moment he gets in, ... he's screaming and shouting obscenities at a five year old child," and "[H]e's saying things like 'Get the fuck away from me.' How in the world is that reasonable ...?"

The conduct at issue might be more effectively addressed by the Department of Children and Families, rather than by the criminal laws.