SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. ROBIN B. ADAMS

 
 Docket:
 SJC-13638
 
 
 Dates:
 December 2, 2024 - April 1, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Essex
 

 
 Keywords:
 Animal. Dog. Evidence, Expert opinion. Witness, Expert. Practice, Criminal, Instructions to jury.
 
 

             Complaint received and sworn to in the Newburyport Division of the District Court Department on May 11, 2023.
            The case was tried before Mary F. McCabe, J.
            The Supreme Judicial Court granted an application for direct appellate review.
            Benjamin L. Falkner for the defendant.
            Jennifer D. Cohen, Assistant District Attorney, for the Commonwealth.
            Lenore M. Montanaro, pro se, amicus curiae, submitted a brief.
            GAZIANO, J.  A District Court jury convicted the defendant of animal cruelty in violation of G. L. c. 272, § 77.  The charges arose after witnesses in a public park observed the defendant, in an apparent fit of anger, discipline his dog by repeatedly punching it in the head.  In his defense, the defendant explained that he acted to save the life of a groundhog his dog was attacking and, in any event, he pulled his punches to minimize harm. 
            The defendant raises two issues on appeal:  first, whether the trial judge erred in precluding the defendant's expert witness from testifying about his dog's pain response and "prey drive"; and second, whether the judge erred in declining to instruct the jury on bona fide discipline and defense of another animal.  Concluding that there was no reversible error, we affirm.[1]
            1.  Background.  We recite the facts the jury could have found, reserving other facts for our discussion of specific issues.
            The defendant has owned Bodie, a yellow, adult male, Black Mouth Cur, since 2016.  On a Wednesday morning, May 10, 2023, the defendant took Bodie to a public park in Amesbury and let him run through the park off-leash.  Sometime around 11 A.M., Bodie started barking loudly, apparently excited by a wild animal.  The defendant, who was walking approximately 400 to 500 yards away from his dog at this time, heard the barking and, after an unsuccessful effort to get Bodie to come to him, eventually walked to Bodie's location.  When he caught up with Bodie, he found his dog "engaged in combat" with a groundhog.  The defendant shouted at Bodie until he left the "combat area."  While the defendant stood between the two animals, Bodie was still fixated on the groundhog and did not respond to the defendant's commands to back off.  In what the defendant argues was an effort to gain compliance, he grabbed Bodie, pinned him to the ground with his left hand, and brought his right fist down, striking the dog.  Thereafter, the defendant reattached the leash and began to walk toward his car.  
            The amount of force the defendant employed to gain control of his dog was a contested issue at trial.  Three witnesses observed the defendant, who was visibly angry and using profanity, forcefully punch his dog anywhere from five to ten times.  The jury could have found that this forceful punching lasted between thirty and forty seconds.  One of the witnesses confronted the defendant, saying, "I saw you beat the shit out of your dog."  In contrast, the defendant claimed that he pulled his punches as he was trained to do in martial arts sparring sessions.  
            Amesbury police officers responded to the park for a report of animal cruelty.  An officer stopped the defendant's vehicle near the park's entrance.  The officer was then joined by Newburyport animal control officer Kayla Provencher.  Provencher examined Bodie, finding no visual injuries or other signs of distress.  The defendant explained to both Provencher and the police officer that Bodie was attacking "some kind of wildlife," and that he only became physical with Bodie to cause him to release the animal.  In his conversation with Provencher, the defendant acknowledged that "from a distance" the incident "could look bad."  
            The following day, the Amesbury police seized Bodie and took him to the Amesbury Animal Hospital.  Veterinarian Angela Durkac performed a full physical and neurological exam.  She noted that Bodie exhibited pain sensitivity on his front right paw but was otherwise healthy with no other indications of soft tissue or blunt force injuries.
            After a two-day trial, a District Court jury convicted the defendant of animal cruelty in violation of G. L. c. 272, § 77.  The defendant filed a postconviction motion for a new trial, arguing that the verdict was against the weight of the evidence.  The trial judge denied the motion, and the defendant filed a timely notice of appeal.  We allowed the defendant's application for direct appellate review. 
            2.  Discussion.  a.  Exclusion of expert testimony.  The defendant argues that the judge erred in excluding expert witness testimony from Lauren Puff, a licensed veterinary technician.  "The decision to exclude expert testimony rests in the broad discretion of the judge and will not be disturbed unless the exercise of that discretion constitutes an abuse of discretion or other error of law."  Commonwealth v. Fernandes, 487 Mass. 770, 778 (2021), cert. denied, 142 S. Ct. 831 (2022), quoting Palandjian v. Foster, 446 Mass. 100, 104 (2006).  An abuse of discretion occurs where the judge "made a clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives" (quotations and citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  Because the defendant objected at trial, we review for prejudicial error.  Commonwealth v. Hinds, 487 Mass. 212, 233 (2021), S.C., 494 Mass. 681 (2024).  Under this standard, "the Commonwealth must show that any error did not influence the jury or had but very slight effect" (quotation and citation omitted).  Commonwealth v. Bohigian, 486 Mass. 209, 219 (2020).  
            Prior to trial, the defendant filed a certificate of reciprocal discovery, in which he listed Puff as an expert witness and certified that he had disclosed copies of her veterinary technician license, curriculum vitae, and expert report to opposing counsel.  Puff's expert report included her opinion on the significance of the "pain response" that the veterinarian observed in Bodie's front right paw.[2]  According to the report, that response "indicates that [Bodie] is not a stoic dog and will show a response to pain, which may differ from some dogs that don't display overt signs of pain."  Defense counsel explained that the purpose for offering Puff's opinion on this matter was to allow the jury to infer that Bodie was not struck with force because, if he were, the veterinarian would have observed a "pain response" in Bodie's head area.  
            The report also included Puff's opinion on the "predatory chase drive" or "prey drive" of dogs like Bodie, which Puff described as "an instinctual behavior that many breeds can exhibit, where dogs have an overwhelming desire to chase, hunt, or bite/kill smaller animals or prey."  The defendant sought to offer this opinion to support his claim that his decision to resort to physical force was reasonable given Bodie's instinctual "hyperfixation" on the groundhog.  
            At trial, the defendant testified in his own defense and called two witnesses, Durkac and Puff.  Defense counsel asked Durkac, the veterinarian, whether it was "fair to say, based on [her] evaluation, that Bodie did have some kind of significant reaction to pain."  The Commonwealth objected, and the judge called the parties to sidebar.  The judge asked defense counsel whether his questioning was "just going to the foot," or if he was "suggesting an expert opinion."  Defense counsel clarified that his question was "directed at the fact that the dog did react to the pain in his foot" and that he was "not going to ask anything further."  Ultimately, Durkac testified that Bodie demonstrated a pain reaction when she palpated his right paw, and that Bodie did not demonstrate a pain reaction when she examined other parts of his body.  
            The defendant next called Puff to the witness stand.  Defense counsel asked Puff whether, based on her review of Durkac's report, she had "any opinions as to the state of Bodie's health at the time that he was evaluated by Dr. Durkac."  Puff responded that "all of [Bodie's] vitals were stable," that "he did show some pain response when they palpated that right front paw," and that "upon palpation of abdomen and skull, neck area, that all seemed to show no pain response."  Defense counsel then asked whether there was anything significant about the fact that Bodie exhibited a pain response in his front right paw but nowhere else.  The Commonwealth objected to the subject matter of the testimony, and the judge sustained the objection. 
            The judge explained that she was unaware that Puff was being offered as an expert and informed the parties that she would recess to review the witness's qualifications.  Before doing so, she asked defense counsel what expert opinions he intended to elicit from Puff.  Defense counsel informed the judge that he expected Puff to explain how a "dog that expresses a pain response in one area expresses a pain response when it feels pain" and "the dog would have expressed pain when . . . its head was palpated."  The judge explained that she did "not have a problem with . . . anyone saying the dog flinched when its paw was touched, and it didn't flinch at any other time," but noted that Puff was now the second defense witness to testify that "the dog's foot was injured and nothing else. . . .  [W]hat else is [Puff] going to say beyond that?"  In response, defense counsel argued that Puff was adding context to the veterinarian's testimony. 
            After reviewing the relevant materials, the judge ruled that Puff was not qualified to testify as an expert.[3]  Accordingly, she limited Puff's testimony to the content of Durkac's veterinary reports.  To "demonstrate to the jury that [the defense] had some purpose for calling [Puff]," defense counsel asked whether the veterinary records suggested that there were any blunt force injuries on Bodie.  Puff responded that they did not.  On cross-examination, the prosecutor asked whether Puff had personally examined Bodie.  Puff responded that she had not. 
            i.  Pain response.  The defendant argues that the judge erred in concluding that Puff was not qualified to offer an expert opinion on the significance of Bodie's pain response, and that Puff's opinion was directly relevant to his claim that he did not harm his dog.  "Lay jurors would not know," he contends, "how dogs react to or show pain."  We need not decide whether Puff was qualified to provide expert testimony on this subject.  Notwithstanding this ruling, the judge had adequate grounds to exclude based on the cumulative nature of Puff's testimony.  See Commonwealth v. Mandeville, 386 Mass. 393, 397 (1982) ("It is the general rule that no error will be found when an incorrect specific objection is sustained, if some other proper ground for exclusion exists").
            In determining the admissibility of expert testimony, a judge has a "general duty to exclude evidence that is irrelevant or for which the probative value is substantially outweighed by the risk of unfair prejudice, confusion, or waste of time."  Commonwealth v. Hoose, 467 Mass. 395, 417 (2014).  See, e.g., Commonwealth v. Mulgrave, 472 Mass. 170, 182-183 (2015) ("A trial judge has the discretion to control the scope of the examination of witnesses . . . and can exclude witnesses whose testimony is cumulative, repetitive, or confusing" [citation and alteration omitted]); Commonwealth v. Bonds, 445 Mass. 821, 831 (2006) ("we rely on a trial judge to exercise discretion in admitting only relevant evidence whose probative value is not substantially outweighed by its prejudicial or cumulative nature"); Commonwealth v. Patterson, 445 Mass. 626, 639 n.10 (2005) (to be admissible, expert testimony must be relevant as well as reliable).  See also Mass. G. Evid. § 702 (2024).
            The defendant stated that Puff's testimony was meant to "contest the fact that [the defendant] actually did the actions that he's being alleged to have done" because "the lack of injuries is inconsistent with the physical descriptions that are provided by the eyewitnesses."  The jury could have readily drawn the same inference from evidence previously admitted at trial that Bodie's injuries were limited to a sore paw.  Provencher, the animal control officer who observed Bodie immediately after the incident, testified that she "couldn't see any physical . . . marks on him or anything along those lines."  Durkac, the veterinarian who examined Bodie the following day, testified that Bodie exhibited a pain response in his front right paw, but nowhere else.  Puff testified, without objection, that Bodie exhibited a pain response when Durkac palpated his right front paw and showed no pain response "upon palpation of abdomen and skull, neck area."  We therefore conclude that the judge did not abuse her discretion in excluding the testimony because it would have been cumulative.  See, e.g., Mulgrave, 472 Mass. at 182-183 (finding no error in trial judge's exclusion of cumulative expert testimony); Bonds, 445 Mass. at 831; Commonwealth v. Urrea, 443 Mass. 530, 544 (2005) (finding neither error nor prejudice in judge's exclusion of cumulative documentary evidence).
            ii.  Prey drive.  The defendant also argues that Puff's opinion on Bodie's prey drive was admissible to demonstrate that he struck his dog to "protect a wild animal from Bodie's aggressive, prey-driven behavior."  A lay jury, he contends, "would not necessarily understand the behavior of a dog with a high prey drive."  The defendant sought to have Puff define the concept of prey drive and offer her opinion as to whether Bodie (a "hunting" dog she did not examine) is the type of dog that exhibits this behavior.  The judge precluded Puff from offering an opinion on prey drive, noting that Puff "[is] a vet tech testifying to this unknown, unseen dog's prey drive" and "[p]utting aside whether I even determine her to be an expert, I am not accepting her expert opinion as to the dog's prey drive."  
            Again, we need not decide whether Puff was qualified to provide expert testimony on this subject.  To the extent that the judge erred, we conclude that the exclusion of Puff's prey drive opinion did not influence the jury or had a very slight effect.  Bohigian, 486 Mass. at 219.  The concept of prey drive and Bodie's display of that trait were evident from testimony that Bodie "fixated" on killing the groundhog.  Each of the Commonwealth's three eyewitnesses described how, before the defendant caught up to Bodie, the dog was running in circles, barking loudly, and became excited by whatever he found in the grass.  The defendant, in turn, explained that Bodie's heightened state made it difficult for him to gain compliance.  Through this testimony, the jury were aware of Bodie's "aggressive, prey-driven behavior."  Additional testimony on the subject, particularly from a witness who had not personally examined Bodie, would likely not have aided the jury's understanding or would have had only a slight effect.  Therefore, even assuming that the exclusion of the expert testimony was error, we conclude that the defendant was not prejudiced.  See Commonwealth v. Imbert, 479 Mass. 575, 586-587 (2018) (finding no prejudice where issue was collateral to defendant's guilt and "likely did not matter to the jury's verdict").
            b.  Jury instructions.  The defendant challenges the judge's refusal to instruct the jury on bona fide discipline of an animal and defense of another animal.  Because the defendant properly preserved the issue of denial of requested jury instructions, we review the trial court's ruling for prejudicial error.  See Commonwealth v. Teixeira, 490 Mass. 733, 742 (2022).  "In assessing the sufficiency of the jury instructions, we consider the charge in its entirety, to determine the probable impact, appraised realistically . . . upon the jury's factfinding function" (citation and quotation omitted).  Id.  "Instructions that convey the proper legal standard, particularly when tracking model jury instructions, are deemed correct."  Commonwealth v. Doughty, 491 Mass. 788, 801 (2023), quoting Green, petitioner, 475 Mass. 624, 629 (2016).  Because the provided instructions, which tracked G. L. c. 272, § 77, enabled the jury to consider both arguments, we conclude that the judge did not err.
            The defendant requested that the jury be instructed on the "justifiabl[e] use [of] force to discipline or train his dog."  In making this request, the defendant relied on Commonwealth v. Lufkin, 7 Allen 579, 582-583 (1863), in which this court recognized bona fide discipline as a lawful defense to animal cruelty.  See Commonwealth v. Zalesky, 74 Mass. App. Ct. 908, 909 (2009).  The defendant raised this issue through his own testimony, where he explained that he learned discipline techniques from canine instructional video recordings and that his intention was to gain control over Bodie, not to harm him.  The judge denied the defendant's request for a supplemental instruction at the close of evidence, noting that the language in the model jury instructions was all that "the jury has to have."  See Instruction 7.270 of the Criminal Model Jury Instructions for Use in the District Court (May 2017).  Based on that model instruction, the jury were instructed as follows: 
"[T]he Commonwealth must prove beyond a reasonable doubt any of the following:  that the defendant tormented or cruelly beat an animal or that the defendant had the charge or custody of an animal, either as owner or otherwise, and inflicted unnecessarily unnecessary cruelty upon it.  The term 'cruelty' means inflicting severe or unnecessary pain upon an animal without any justifiable cause. 
"The Commonwealth does not have to prove that the defendant knew he was violating the statute or that he specifically intended the harm that it forbids.  But the Commonwealth must prove beyond a reasonable doubt that the defendant intentionally and knowingly did the acts that were plainly of a nature as would violate the statute.
"Severe pain inflicted on an animal for the mere purpose of causing pain or indulging in vindictive passion is cruel.  The animal need not sustain discernable physical injury for you to find the defendant guilty of cruelty to an animal."
            During deliberations, the jury asked the judge to clarify the definition of "cruelty."  Before the judge answered, the defendant renewed his request for supplemental instructions, which the judge denied.  Instead, the judge reiterated the prior instruction, explaining that "cruelty means inflicting severe or unnecessary pain upon an animal without any justifiable cause.  Severe pain inflicted upon an animal for the mere purpose of causing pain or indulging vindictive passion is cruel."  
            We find no error.  Unlike in Lufkin, the instruction provided in this case did not foreclose the possibility of acquitting the defendant on grounds of bona fide discipline.[4]  On the contrary, the jury could have concluded that the discipline of Bodie was either "[]necessary," or had a "justifiable cause."  See Commonwealth v. Toolan, 490 Mass. 698, 708 (2022) ("Judges have broad discretion in framing jury instructions, including determining the appropriate degree of elaboration"); Commonwealth v. McGee, 467 Mass. 141, 154 (2014) (judge "is not required to grant a particular instruction so long as the charge, as a whole, adequately covers the issue" [citation omitted]).  There was no error.  
            Although the instruction provided in this case was sufficient to allow the jury to accept a bona fide discipline defense, we acknowledge that a supplemental instruction could be helpful to juries in future cases.  See Commonwealth v. Lacrosse, 494 Mass. 475, 495 (2024).  Going forward, in cases where the defendant raises the issue of bona fide discipline, a judge should instruct that the owner of an animal may not be subjected to criminal liability for the use of force against an animal provided that (1) the use of force against the animal is reasonable; and (2) the force is reasonably related to the purpose of safeguarding or promoting the welfare of the animal, including the prevention or punishment of conduct by the animal.  Cf. Commonwealth v. Dorvil, 472 Mass. 1, 2, 12-13 (2015) (parental privilege instruction necessary to balance "welfare of children requiring protection against abuse on the one hand, and, on the other, the avoidance of unnecessary State interference in parental autonomy as it concerns child rearing").
            The defendant also challenges the denial of his requested instruction on defense of another animal.  The instruction in this case was sufficient to allow a jury to decide whether the defendant's use of force in the defense of the groundhog either was necessary or constituted a "justifiable cause."  See Toolan, 490 Mass. at 708 (judge has broad discretion in framing instructions); McGee, 467 Mass. at 154 (judge not required to give specific instruction if provided instruction covers issue).
Judgment affirmed.
 
--------------------------------------------
 
            [1] We acknowledge the amicus brief submitted by Lenore M. Montanaro.
            [2] Because Puff did not examine Bodie, her opinion on this matter was based on the veterinary records produced by Durkac during her examination of Bodie the day after the incident. 
            [3] Prior to ruling on Puff's qualification to testify as an expert, the judge noted that it was "[a] little unusual . . . that I'd be asked to accept as an expert a vet tech in a case where a veterinarian just testified."  Notwithstanding that we resolve the issue on other grounds, we emphasize that Puff's lack of a veterinary medical license is not a sufficient ground to preclude her from offering an expert opinion informed by her experience as a veterinary technician.  See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) (holding that expert testimony gatekeeper obligation applies not only to "scientific" knowledge, but to "technical" and "other specialized" knowledge); Canavan's Case, 432 Mass. 304, 313 (2000) ("Observation informed by experience is but one scientific technique that is no less susceptible to [admissibility] analysis than other types of scientific methodology").  See also Ernest E. v. Commonwealth, 486 Mass. 183, 190-191 (2020).
            [4] The instruction provided in Lufkin directed the jury to entirely disregard the defendant's "motive" for striking the animal, which the court concluded was improper.  See Lufkin, 7 Allen at 582-583 ("The jury should have been made to understand that if the defendant struck the horse for the purpose of driving him away, and without any intent to torture or injure him, and the blows given, if they had been given by his owner for the like purpose, would not have been so excessive or immoderate as to be cruel in him, they would not make the defendant an offender under the statute merely because he was a trespasser in striking the horse").