Berry, J.
(dissenting). The majority opinion, I respectfully submit, misapprehends the law of affirmative defenses in this *596 very important area of parental discipline. One who invokes the affirmative defense of parental discipline has a burden to offer some evidence warranting such an affirmative defense instruction — either by cross-examination in the direct case or in a defense case. That was not done here. Instead, the defense case rested on a theory of fabrication. See note 4, infra.
The effect of the majority opinion, I believe, may have untoward consequences. It may be read to mean a parental discipline instruction is warranted in any case involving the hitting of a child for any and every lie, major or minor — and a host of other childhood infractions. Under the majority opinion, if a child lies about doing homework, is a parental hit within the majority’s realm? If a child eats candy and is not supposed to do that, is that within the majority realm? If a child has been untruthful at any time in the past and argued with parents in the past, then may the child be whacked across the face yielding blood, the child’s cellular telephone taken and flung across a small room, and the child pursued to her bedroom to have hair pulled, all within the majority realm? The last answer is “yes,” based on this case, and that should be beyond the pale of any reasonable excuse/justification/parental discipline affirmative defense.
In what appears to me to be a misapprehension of the law of evidence on affirmative defenses, the majority seems to take the position that the simple answer is that all this is just a jury question. See ante at 593 (“On the record before them, it was open for the jury to find [had they been so instructed] that the defendant’s actions were ‘reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor’s misconduct [here, the daughter’s repeated lying]’ ”). However, the majority incorrectly, I think, is merging the “it is a jury question” for jury deliberations and verdict, with the separate and distinct precedent governing the legal responsibility of a judge to make a preliminary legal ruling whether a defendant has adduced sufficient evidence to get an affirmative defense jury instruction. Put another way, the affirmative defense of parental discipline is not just a jury question; it is a judge’s legal instruction determination, followed by a judge’s yea or nay on whether a jury instruction is warranted on the evidence. To follow the path of the majority, I believe, will yield the result of most defendants claiming, and trial judges wondering, whether every lie (or other child misbehavior) is a predicate for a parental discipline affirmative defense instruction.
*597 The daughter did admit throughout her testimony to eating, and lying about eating, the cheese, which led to the defendant mother’s assaults on the day of the encounter. But, contrary to the majority’s casting of the record, it is not so on this record that there was evidence that the daughter “lied on a persistent basis.” Ante at 593.
As basis for this supposed “persistent lying” not proved on the record, the majority strings together without context a bunch of the daughter’s minor inaccuracies about the events transpiring on the day of the cheese theft. Thus for example, the majority, without context, writes that “she ‘admitted to at least being inaccurate on a minimum of five occasions’ in the testimony she had given at trial.” Ante at note 2. What the majority fails to say to provide necessary context is that the supposed lies and inaccuracies in the daughter’s testimony, including what the majority says were on “five occasions,” related to the daughter telling the school official that she had not brought her lunch to school.
Furthermore, contrary to the majority, the daughter testified that she told the police the truth. Thus, there is a similar out-of-context reference, and the record is contrary to what the majority writes in note 2, ante. That is, when confronted by what was fairly standard defense cross-examination about what was and was not in the police report and the counselor’s description of what she remembered being told, the daughter was adamant and did not waver, holding fast that she told the police and the counselor the truth, and did not lie about the cheese incident. So I do not know from whence in the transcript comes this majority reference to supposedly heavy lying to the police and school officials. From what I see in black and white in the trial transcript, the daughter was adamant that she told the police and the school counselor the truth about the assault, and the supposed lies to school officials seem to be about lunch brought or not brought to school.
Lastly, I would also note that in other sentence fragments (see ante at 586-587, 593) there is a misreading of the evidence to support a suggestion that the daughter was a serial liar, thus justifying the beating she received from the mother. In one such sentence fragment, the majority writes that “[tjhere was evidence that the daughter had a history of conflict with her parents over whether she lied to them.” Ante at 593. Again, this description is without necessary context. The actual context is as follows, which shows this reference relates to the daughter living with the grandmother:
*598 Defense counsel: “Okay. You currently live with your grandmother?”
Daughter: “Yes.”
Defense counsel: “And you have since this incident?” Daughter: “Yes.”
Defense counsel: “And do you enjoy living with her?” Daughter: “Yes.”
Defense counsel: “When you —• before this incident, did you at times wish that you lived with your grandmother?”
Daughter: “Sometimes.”
Defense counsel: “And sometimes you wished you lived with grandmother because sometimes you fought with your parents?”
Daughter: “Yes.”
Defense counsel: “And sometimes you fought with your parents about whether you lied to them, or told the truth, is that true?”
Prosecutor: “Objection.”
Daughter: “Yes.”[1]
In sum, the evidence — particularly the daughter’s testimony — does not support the majority position that the assault was justified because of a pattern of regular lies that warranted child discipline.
To be clear further about my position in this dissent, even if the daughter in the past told lies to her parents, what kid has not done that? Do lies in the past, none of which were even probed into at trial or shown to be major or to be of and concerning matters of the child’s safety, justify an assault upon the daughter for taking some cheese from a refrigerator and not immediately confessing thereto for a minute or so? I simply do not see the justification for *599 the affirmative defense of parental discipline that the majority would take from this record.
Lastly, as discussed further herein, the majority would make one legal error in giving the father a parental discipline instruction (to which he was not entitled after he punched his daughter in the face) into a different and separate legal error as grounds to reverse the conviction of the mother, who also was not, on the evidence, entitled to a parental discipline affirmative defense instruction.
It is clear that the majority — having determined that there will be a reversal — turns its attention to an in loco parentis analysis. I disagree with the majority analysis and its seeking to make this arcane case law the foundation for the parental discipline instruction in future cases — especially on this extremely thin trial record. I think the Supreme Judicial Court decision in Commonwealth v. Dorvil, 472 Mass. 1, 12 (2015) (Dorvil), was clear in its extension to a “parent or guardian,” and was not intended to rest on in loco parentis. But, perhaps, whether the Supreme Judicial Court wants trial judges to study in loco parentis is a matter for that court to determine should it deem further appellate review warranted — a path I would urge in this case.
I turn now in this dissent to analysis of those points of divergence from the majority opinion.
As to the defendant mother’s appeal (which is the only appeal before this court),[2] there was not sufficient evidence by any measure to support a parental discipline affirmative defense to the mother’s assault and battery upon the daughter by a hit across the face that led to bleeding, the grabbing and pulling of the daughter by her hair, or the throwing of the daughter’s cellular telephone across the kitchen while the daughter sat in the kitchen — all of this because the daughter ate some cheese from the refrigerator, and then initially bed, denying she had eaten the cheese.
1. The Dorvil reasonableness prerequisite to parental discipline and the three reasonableness prongs. According to Dorvil, 472 Mass, at 12-13, as a matter of law, parental discipline is an affirmative defense to an alleged assault and battery upon a child. *600 To this end, Dorvil specifically holds that, before the affirmative defense of parental discipline may be presented to a jury (by instruction charge) or to a judge as trier of fact, the essential prerequisite to the use of parental force in disciplining a child is reasonableness. “[T]he force used against the minor child [must be] reasonable,” and such force must be “reasonably related to the purpose of safeguarding or promoting the welfare of the minor” (emphasis supplied). Id. at 12. Neither of these reasonableness prerequisites is satisfied on the evidence introduced in this case by the defendant mother. In my opinion, because of that insufficient evidence, the affirmative defense was not applicable, no instruction on parental discipline was warranted, and there was, accordingly, no reversible error. Hence, I dissent.
This case must be considered in light of the governing Dorvil holding that the affirmative defense of parental discipline only stands and may only be properly brought for consideration before the jury (or judge) as the trier of fact if there is sufficient evidence to warrant the parental discipline. Only then, “[a]s with other affirmative defenses [] [in cases] where the parental privilege defense is properly before the trier of fact, [does] the Commonwealth [then] bear[] the burden of disproving at least one prong of the defense beyond a reasonable doubt” (emphasis supplied). Dorvil, 472 Mass. at 13. Here, the evidence fails by sufficiency to meet either the first reasonable force prong of Dorvil, or the second reasonable relation prong. See id. at 12. To the contrary in this case, the level of violence inflicted by the defendant mother negates the affirmative defense that the daughter could be subjected to violent assault and battery because of a lie about eating a particular piece of food in the family refrigerator.[3]
Because such an affirmative defense has an insufficient foundation in the evidence and was not established either in the Commonwealth’s direct case by cross-examination of the pros *601 ecution witnesses or in the defense case (there was no defense case), the mother never met the burden of production to be entitled to an affirmative defense jury instruction concerning parental discipline for the assault and battery upon the daughter. See generally Commonwealth v. Cabral, 443 Mass. 171, 179 (2005) (Cabral), quoting from Model Penal Code § 1.12(1), (2) (1985) (“[Wjhere a defendant asserts an ‘affirmative defense,’ [the defendant] takes on a burden of production, because the Commonwealth has no burden of disproving an affirmative defense ‘unless and until there is evidence supporting such defense’ ”). As with the general law concerning affirmative defenses and jury instructions to that effect, “[i]f the defense is ‘affirmative,’ [as is the defense of parental discipline, it is only when] a defendant raises the defense to a charge and the defense is supported by sufficient evidence, [that] the defendant is entitled to have a jury instruction on the defense, and the Commonwealth has the burden of disproving the defense” (emphasis supplied). Cabral, supra at 179-180.[4]
Given this trial record, I believe the judge’s original position was on the mark when he stated that he was “not convinced at this point that there’s sufficient evidence to raise this disciplinary defense.” That was a correct assessment of the evidence, and nothing changed once the evidence closed.
At trial, there was no affirmative defense evidence introduced that the mother engaged in parental discipline so as to justify the assaults and batteries. This alleged affirmative defense was not developed in the cross-examination of the three prosecution trial witnesses — i.e., the daughter, the school counselor, and the police officer. Nor was any such parental discipline theory presented in a defense case because neither the father nor the mother testified in defense, and the mother did not present any other evidence concerning purportedly justified parental discipline.
To be clear, the importance of this issue is not only whether or not the mother was entitled to a parental discipline affirmative defense instruction. The true reach of the issue extends to the important obligation of a trial judge not to give the instruction *602 when, as here, there is no foundation in the evidence for such a parental discipline affirmative defense instruction. To this end the majority appears to fundamentally misunderstand when an affirmative defense is properly raised by the evidence. Before one can reach the question whether, as the majority writes, “[vjiewing the trial evidence in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979), there was ample basis upon which jurors could have concluded that the defendant’s hitting the daughter did not constitute reasonable parental discipline,” ante at note 5, one must first ask whether the evidence presented at trial, viewed in the light most favorable to the defendant, was sufficient to raise the affirmative defense of parental discipline, entitling the defendant to such an instruction.
That is because Dorvil specifically holds that parental discipline is an affirmative defense. Dorvil, 472 Mass. at 13. Thus, to be entitled to a parental discipline affirmative defense instruction, the evidence must sufficiently raise both the first reasonable force prong of Dorvil, and the second reasonable relation prong.
In this respect whether the evidence sufficiently raises the affirmative defense of parental discipline is similar in many ways to whether and when a defendant is entitled to a jury instruction on the affirmative defense of self-defense (and the use of deadly force in self-defense). See Commonwealth v. Toon, 55 Mass. App. Ct. 642, 644-645 (2002) (“Whether an allegedly erroneous instruction on self-defense [and the use of excessive force in self-defense] is prejudicial [or creates a substantial risk of a miscarriage of justice] necessarily involves examining first whether self-defense was raised sufficiently. If not, the defendant received more than he was entitled to . . . [because such an instruction is warranted only if] the evidence, together with the reasonable inferences, raises a reasonable doubt as to each of the predicates for the use of deadly force in self-defense”). See also Commonwealth v. Harrington, 379 Mass. 446, 450 (1980) (citation omitted) (“A defendant is [only] entitled to have the jury at his trial instructed on the law relating to self-defense if the evidence, viewed in its light most favorable to him, is sufficient to raise the issue. There must be evidence warranting at least a reasonable doubt that the defendant: [1] had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, [2] had availed himself of all *603 proper means to avoid physical combat before resorting to the use of deadly force, and [3] used no more force than was reasonably necessary in all the circumstances of the case”).[5]
Rather than addressing the question whether there was sufficient affirmative defense evidence introduced consistent with the Dorvil prongs and warranting a parental discipline affirmative defense instruction justifying the assault and battery, the majority summarily concludes that “[t]he evidence supporting an affirmative defense need not come from a defense witness,” ante at note 12, and relies on snippets to suggest (erroneously I would say) that the record has evidence of persistent lying. First, I do not disagree that an affirmative defense of parental discipline can be developed in the cross-examination of prosecution trial witnesses. See ante at note 9. But here, it was not. And I do not think the snapshot of testimony from the daughter was sufficient to properly put this affirmative defense of parental discipline by instruction before the jury, as trier of fact.
2. The majority in loco parentis pronouncements. Furthermore, given that Dorvil, 472 Mass. at 12, makes perfectly clear that it encompasses a “parent or guardian,” I cannot follow the majority’s attachment to the twenty-five year old Commonwealth v. O’Connor, 407 Mass. 663, 668 (1990) (O’Connor), and its in loco parentis analysis that, in turn, is tied to financial support. Given the empty trial evidence on this important affirmative defense, I would not (as does the majority) reach out to address in the abstract the parameters of parental discipline instructions, with the majority focus on an in loco parentis theory.
Nor do I think O ’Connor provides a springboard to the rights and obligations of parents within the wake of Dorvil. Further, the “domestic fireside” warmth of the century-old case of Mulhem v. McDavitt, 16 Gray 404, 406 (1860), on which the majority relies in its in loco parentis analysis, is not where the world of family is today. That arcane in loco parentis analysis does not fit modern life models. In effect, the majority harkens back to 1860 ancient *604 law, notwithstanding an evidentiary void in this 2013 case. I decline to follow that path. And, more significantly, the 2015 Dorvil decision expressly encompasses parents and guardians.[6] So the majority’s focus on in loco parentis is an exploration with no trial record path related to modern decisional law.
In my humble view, given the wholly inadequate trial record, this is not the case in which to move into this fraught area of child discipline. Furthermore, the nonexistence of any trial evidence leaves me with little assurance that this court should be making pronouncements in the abstract on the arcane doctrine of in loco parentis, in a case where the affirmative defense is not justified in the first place.
3. The majority failure to consider the insufficiency of the evidence. Finally, I do not accept, and dissent from, the part of the majority analysis that concludes that “[wjhile there is considerable force to the Commonwealth’s position that the defendant’s behavior should not be viewed as reasonable parental discipline, her actions were not so out of bounds as to exclude such a defense from the jury’s consideration.” Ante at 594. To the contrary, this beating by a violent slap across the face, delivered with such force that it caused the daughter’s ear to bleed, the throwing of a cellular telephone as a projectile, and the pursuit of the daughter into the bedroom to pull her hair were all acts arising out of anger. Such volatile anger-driven acts did not in any way reflect reasonable use of force or proportionality to the child’s “major offense” of eating cheese stored in the refrigerator and then denying/lying about that. Hence, no affirmative defense instruction on parental discipline was warranted under Dorvil.
In sum, respectfully, I see the majority as not resolving the fundamental question whether the evidence sufficed for the mother to receive the benefit of this affirmative defense and a parental discipline jury instruction. Furthermore, I am troubled that a conviction is being reversed, with a lot of writing about in loco parentis and the parental discipline affirmative defense, without any supporting trial evidence.[7]
*605 For all of these reasons, I dissent from the majority’s decision reversing the conviction of assault and battery upon the daughter.

 The same flaws appear in the majority sentence fragment, ante at 593, where the evidence is represented to say that the daughter “had a history of conflict with her parents over whether she lied to them, that she had given her parents reason not ‘to believe and trust’ her, that she lied on a persistent basis.” This additional reference, like the other majority reference detailed above, is in the context of the daughter leaving the parents’ household and going to live with her grandmother.

 Neither the mother nor the father was, I believe, entitled to a parental discipline instruction. Only the appeal of the convicted defendant mother is before us. The father, who received an unwarranted parental discipline instruction, was acquitted of assault and battery, despite the fact that he punched his daughter in the face, yielding a fat lip. Since he was acquitted, the erroneously given instruction to the benefit of the father is not before us.

 The court in Dorvil also considered a third prong that would focus on the child’s offense, here, stealing cheese and lying about eating the cheese. “In applying the [parental discipline defense] framework, each of the three prongs constitutes a question for the trier of fact. In evaluating the reasonableness of the force used, and of the relation of that force to a permissible parental purpose (the first two prongs of the test), the trier of fact may consider, among other factors, the child’s ‘age,’ the ‘physical and mental condition of the child,’ and ‘the nature of [the child’s] offense’ ” (emphasis supplied). Dorvil, 472 Mass. at 13, citing Restatement (Second) of Torts § 150 (1965). Because there is a failure of proof on the other two prongs, I will leave aside the question whether a child eating cheese deserves to be assaulted.

 I agree with the Commonwealth’s position in its filing pursuant to Mass.R.A.P. 16(1), as amended, 386 Mass. 1247 (1982), submitted after Dorvil was decided, that “[n]o evidence on the issue of parental discipline was adduced at trial. Instead, the defendant relied on the defense of fabrication — that the victim lied about what happened to her. This was the theme in the opening . . . [and] in cross-examination.” (Emphasis supplied.)

 It is interesting to compare the facts in the present case to the facts of Dorvil. First, in Dorvil, both the defendant father and the child’s mother testified at trial. Dorvil, 472 Mass. 45. Not so here. Second, in Dorvil, the defendant and the child’s mother testified at trial “that [the defendant] administered the spanking because the child disobeyed [the defendant’s] direction to go to her mother, and continued playing on the sidewalk near the street.” Id. at 13. Not so here. Finally, the factual setting in Dorvil — a young child running around near a bus terminal on a sidewalk close to the street — raises safety concerns tied to the child’s conduct. Id. at 5, 13. Not so here.

 See, e.g., the editorial in the July 20, 2015, issue of the Massachusetts Lawyers Weekly that fully catches that Dorvil applies to parents and guardians.

 After summarily concluding that there was sufficient evidence introduced at trial to warrant a parental discipline instruction, the majority ultimately decides that reversal of the conviction of the mother is required because of an “unfairness to the defendant,” ante at 595, such that a new trial is warranted. According to the majority, this unfairness inured when the judge, having changed his *605 position, gave the father the unwarranted benefit of a parental discipline instruction while expressly telling the jury not to consider whether the mother may have engaged in parental discipline. But, if the mother had no reasonable tenable basis for the parental discipline instruction anyway, there was no error in depriving her of the instruction. Where one defendant gets a requested affirmative defense instruction (not warranted by the evidence) and the codefendant does not get the instruction (even though the instruction as to the other co-defendant is also not warranted by the evidence) that does not lead to reversal for the defendant correctly denied a jury instruction on an affirmative defense. The abstract analysis of in loco parentis in the majority as to stepparents becomes a very small part of a very big discussion of other parental discipline legal issues, with which I do not agree.